[Opinion adopted October 28, 1884.]

---

TEXAS & P. R'Y CO. v. MANUEL GARCIA.

(Case No. 1730.)

1. RAILWAY COMPANY — DROVER'S PASS — NEGLIGENCE — DAMAGES.— If a conductor of a railway train receives on his train minors, knowing that they are traveling under a "drover's pass" as assistants to a drover, under a pass which contained a provision that minors should not be permitted to travel as assistants under such a pass, the minors are entitled to all the rights as against the company, for injuries received through the negligence of its servants, that any other passenger would have.

2. TRIAL.— When there is a mistrial of a cause and the jury is discharged, the cause may be again tried at the same term, and no objection on account of such second trial can be considered on appeal, unless a motion was made in the court below to continue for the term or postpone to a later day in the term.

3. SAME — ARGUMENT OF COUNSEL.— It is not error to permit counsel, in the closing argument, to reply to an argument made by the adversary on a question of law applicable to the case, and to comment upon authorities applicable to the question.

4. SAME.— The time and method of argument of counsel is largely subject to the discretion of the trial court, and the supreme court will not reverse a judgment for the sole reason that it might believe that too much latitude in discussion had been permitted, when it is not made to appear that the appellant was prejudiced thereby.

5. SAME.— The practice of using language in an argument referable to facts not in evidence, and calculated to rouse the prejudices of the jury against a party to the cause, should not be permitted. But when such language is used in response to similar language used by the adverse counsel, and equally unauthorized, the party provoking such a course of argument will not be heard to complain on appeal.

6. DAMAGES — RAILWAY COMPANY.— A passenger was injured in alighting from a railway car in the night, at the wrong place and time, believing that he had reached his destination and had been directed to leave the car, whereby he was injured. *Held*, that in every such case all the facts surrounding the circumstances under which he left the car should be looked to, and from them, in each case, the jury must determine, as a question of fact, whether the passenger was authorized to believe from the acts and words of the servants of the company that it was intended that he should alight from the car at the time and place he attempted to do so.

7. FACT CASE.— See this case for facts under which a verdict and judgment for $10,000, for personal injuries inflicted through the alleged negligence of the company's agents, was not disturbed.

APPEAL from Harrison. Tried below before the Hon. Felix J. McCord.

Manuel Garcia, a minor ten years old, brought suit in the district court of Harrison county, Texas, by his next friend, Sixto Garcia, against the Texas & Pacific Railway Company, averring that on August 20, A. D. 1883, he was a passenger on one of appellant's trains going from Longview Junction to Marshall, Texas, and the train of cars went to Marshall on that date with appellee as a passenger thereon; that when the cars arrived at Marshall, the agents and employees of appellant in charge of the train told Sixto Garcia, who was the father of Manuel, that they were at Marshall, and to get ready to get off — he was just going to pull them to where they were to get off,— and when said agents and employees whose duty it was, informed Sixto, Manuel was awakened from his sleep, and then the train came to a stop, and Manuel, thinking the train was

at the proper place for him to get off, walked out of the car to get off, and when Manuel got out upon the platform of the car, the agents and employees of defendant in charge of the train, without giving any signal or warning of any kind, caused the train to move very slowly; that then Manuel stepped on to the car in front of him, and was there but a moment when the agents and employees of appellant in charge of the train caused " said train of cars to give a very sudden, hard, severe and brutal jerk backwards," which threw said Manuel forward, down on the ground, under the train of cars, and the jerk was caused by the gross negligence and carelessness and wilful misconduct of appellant and its agents and employees in charge of the train, which negligence, carelessness and misconduct caused Manuel to be thrown under the cars on the ground, and caused him to be seriously and permanently injured, as follows: " The left arm was crushed, crushing the bones in said arm at the elbow joint, and mashing and crushing the arm all over, and bruising the arm all over severely, and also broke the right leg badly, and hurt the thumb and fingers on the left hand, dislocating and severely injuring them, and severely injuring the right arm and hand and left leg and the feet of said Manuel by bruising and mashing them, from which said injuries said appellee was forced to and did go to bed, and was forced to and did have a surgeon and physician, and on account of said injuries said Manuel was forced to and did undergo a dangerous surgical operation by having bones and pieces of bones of his left arm taken out at the elbow joint, and that the skin and flesh of the left arm all came off, all on account of said injuries." That " said Manuel has been seriously and permanently injured, and that it will shorten his life and tend to shorten it, and renders his left arm wholly useless and valueless to him, and that he will not be able to labor and earn money as well as he would if said injuries had not been inflicted."

Appellant filed an answer containing a general demurrer and numerous special exceptions to plaintiff's original petition, and general denial, and specially that plaintiff was not a passenger on its train, but was there traveling on a free ticket called a " drover's pass," which was obtained by the father of plaintiff, who falsely represented to the agent of the defendant who issued the same, at time of issuance, that Manuel was a grown man, and competent to take care of and attend to feeding of a lot of horses, the property of Sixto Garcia, plaintiff's father, that was being shipped over defendant's road, and that defendant had a custom, when shippers of horses request it, to issue drovers' passes to the persons in charge of

such animals to go with the same and return free, but defendant only issues said passes to grown persons. That Sixto Garcia applied for drovers' passes, at the shipment of said animals, for himself as owner and Manuel as assistant, representing to agent issuing same that Manuel was a grown man, when he was a little boy. That had not the agent been so deceived he never would have allowed Manuel to travel under the pass, and never would have issued same. That tending stock on a freight train is exceedingly dangerous, and more dangerous than traveling on a regular passenger train, and no person of Manuel's age ought to be allowed to take such risks. That Sixto Garcia, by his fraud, voluntarily exposed Manuel to the danger, and but for this no injury would have happened, and by reason thereof both Sixto and Manuel were guilty of contributory negligence, and were not, by reason of the fraud, entitled to be held as passengers. That when the train reached Marshall and was moving into the yard, Sixto Garcia got off while the train was moving, and Manuel walked out upon the platform or flat-car, and while standing there was thrown off and injured by the ordinary movement of the train, and appellant's agents in charge of the train were not informed of Manuel being on the flat-car; that had he remained in the passenger-coach no injury would have happened to him, and that Manuel and his father thereby contributed to bring about the injury.

There was much evidence, but that which is material will be found in the opinion. Verdict and judgment for Manuel Garcia for $10,000 damages.

*James Turner*, for appellant.

*Alex. Pope*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— The ruling of the court in reference to the admission of proof to the effect that the "drovers' pass," on which Sixto Garcia and his son Manuel and another boy were traveling, contained a provision that neither "minors nor women" should travel thereon as assistants to the drover, was in no manner important under the facts presented. The conductor of appellant's train saw that pass and knew who the assistants were who were traveling on it. Knew that they were minors, and, notwithstanding this, received them as passengers. Under this state of fact they were entitled to all the rights, in so far as any question involved in this case goes, to which any other passenger on that train would have been entitled; and proof of the contents of the "drovers' pass" would not in the slightest degree have affected the case.

The fact that there had been a mistrial of the cause furnished no legal reason why the cause should not be called up again at the same term and tried.

The statute declares that " where a jury has been discharged as herein provided, without having rendered a verdict, the cause may be again tried at the same or another term." R. S., 1314.

If any reason existed why the defendant could not safely try the cause when it was called the second time, then an application to continue or to postpone the case until some later day of the term should have been made.

No such motion was made, and, so far as the record shows, the appellant was not in any manner prejudiced by the trial of the cause at the same term at which the mistrial occurred.

It is not error for the court trying a cause to permit counsel for the plaintiff in the closing argument, in reply to an argument upon the law applicable to a case made by counsel for the defendant, to discuss the same question and to read and comment upon authorities applicable to the question.

The line and method of argument to be pursued by counsel in any stage of a trial is subject largely to the discretion of the trial court, and unless it appears very clearly that such discretion has been abused, this court would not feel authorized to reverse a judgment simply because it might be of the opinion that a different course should have been pursued. It is not made to appear that the appellant was in any way prejudiced by the course of argument which counsel for the appellee was permitted to pursue in reply to the legal propositions asserted by counsel for appellant, and the bill of exceptions shows that the argument was in reply.

It appears from a bill of exceptions that counsel for the appellee, during the closing argument in the cause, was permitted to use language calculated to arouse the prejudices of the jury against the appellant, and this upon matters not arising from the facts of the case. This practice has been often condemned by this court (Willis & Bro. v. McNeill, 57 Tex., 474; T. & St. Louis R. R. Co. v. Jarrell, 60 Tex., 270); and in some cases such course may afford sufficient ground for the reversal of a judgment.

The language used by counsel for the appellee in the closing argument was highly objectionable.

It appears, however, from the bill of exceptions, that the language was used in reply to language used by counsel for the appellant, which was but little less, if not fully as objectionable, as that used in reply.

If counsel for one party pursues a line of argument not called for by the facts of the case, and in itself improper, and thereby invites a reply, the party so through counsel violating a proper course of procedure and the rules intended to secure the proper presentation of causes, ought not to be heard to complain of the reply; and in such cases this court will not reverse a judgment on an assignment of error based on such facts.

The main question in this cause is raised by the tenth assignment of error, which urges that the court erred in overruling the motion of the appellant for a new trial, based on the insufficiency of the evidence to sustain the verdict.

The petition was not bad on general demurrer, and there was evidence tending to support its averments.

The jury having found a verdict in favor of the appellee, there being a conflict of evidence, but not such a preponderance against the verdict as to authorize this court to set it aside, it must be held that the facts stated by the witnesses for the appellee relating to the want of due care by the employees of the appellant are true.

As before said, the facts alleged and proved made Manuel Garcia a passenger of the appellant's railway at the time he was injured; there is no objection made to the charge of the court, and as the question of negligence of either or of both of the parties was one for the determination of the jury, their verdict must be sustained if there be evidence fairly tending to prove that there was not the exercise of due care by the employes of the appellant which the law exacts of a carrier towards passengers.

The evidence for the appellee shows that Sixto Garcia and his son Manuel, a boy of ten years of age, were passengers on appellant's train from Longview to Marshall; that the train was a freight train having a car in which passengers rode; that with the train were four car-loads of horses which Sixto Garcia was taking to market; and that on the way from Longview to Marshall the father and son, and another boy who was traveling with them, staid in the passenger car, the two boys being asleep on a bed which the conductor had made for them, until they arrived at Marshall.

Sixto Garcia testified that, when the train reached Marshall, the conductor came to him and said " Marshall, get ready to get off, I am just going to pull you to the stock yards," whereupon he aroused the two boys and assisted them in putting on their clothes and getting ready, and that in a moment or two the train stopped; that the train was moving very slowly when the conductor spoke to him, and that as soon as the conductor told him he was at Marshall and

directed him to get ready to get off, the conductor took his light, went out of the car and got off while the train was still moving slowly, after which the train immediately stopped; that the train again moved very slowly a little forward and again stopped, and that he then thought from what the conductor had said to him, from the conductor getting off of the train, and from the stopping of the train, that they were at the proper place for him and the two boys to leave the car, at which time there was no employe of the appellant on the car, nor any light in it, it being in the night.

He further stated that after the car stopped the second time he took the two boys and went out of the car for the purpose of getting off; that when he reached the platform of the car it was dark, and neither light nor any one to aid them in getting off; that he looked for the conductor or some other person and could see no one, and that he then stepped on the car just in front of him for the purpose of seeing on which side of the train to get off, and to see on which side of the train the stock yards were, and to look for some employe of the railway company; that he could see better from the car on which he stepped than from the platform of the car which he had left; that when he stepped on the car in front of that in which he had ridden, both of the boys were with him, one on each side and held by the hand; that then, without any warning, the train was moved, giving a very severe jerk, by which he was thrown forward against the car, and his son (Manuel) thrown under the car, which ran over him, crushing one of his arms and breaking one of his legs.

The witness further stated that he and the two boys were strangers at Marshall, and that the conductor knew that fact, and that neither he nor either of the boys knew anything about the relative situation of the depot and stock yard.

The testimony of Manuel Garcia was substantially the same as that of his father.

From the conductor's testimony it would appear that Sixto Garcia and the two boys were expected to alight at the place on the main Shreveport track, where it was intended to leave the cars in which the horses were. The position of that place in relation to the place where the three did attempt to get off is not shown.

What inferences the plaintiff and his father might draw from the language and acts of the conductor, by them related, was a question for the jury. If, from the language used, they were reasonably authorized to believe it was the intention of the conductor that they

should leave the car when it stopped, then they might do so, if not careless in the manner of leaving, without being guilty of contributory negligence.

The car was moving slowly when the conductor notified the father that they were at "Marshall," the terminus of their journey on that car; the announcement was made for the express purpose of having them to get ready to leave the car; they were informed that he was just going to pull them to the stock yards; they were traveling with and for the purpose of taking care of stock, and may they not have been authorized to believe when the cars stopped, moved on a short distance and stopped again, that they had reached the stock yards, and that it was intended they should alight? The jury in effect so found, and we are not prepared to say as matter of law that their finding was wrong.

It is said by an elementary writer of recognized ability, "that the calling of the name of a station, on coming to a stop, is to be regarded as an invitation to alight; and a passenger who on such summons leaves the car, taking due caution to look around him when practicable, may recover from the company in case he be injured by ignorantly stepping on an unsuitable place." Wharton on Negligence, 379, 650. The author cites Lewis v. R. R., L. R., 9 C. P., 66, and Southern R. R. v. Kendrick, 40 Miss., 384, neither of which are accessible to us here, as authority for the proposition. The rule seems to have been recognized in C. & I. Central R'y Co. v. Farrell, 31 Ind., 408.

The same reasons which lead to the adoption of the above rule would perhaps have as much force in a case like the present as in one in which the name of the station is called after the train has stopped, but in either case it presents a question of fact.

The question seems to have been frequently considered by the English courts, and many of the decisions of those courts will be found collected by Mr. Hutchinson in his work on Carriers.

To the cases referred to we have not access here, but the author, summing up the result of these decisions, says, "from which the conclusion to be drawn is, that such companies must be extremely careful not to mislead their passengers into the belief that the halting of a train at a station is meant as an invitation to them to alight, when it is not so intended; and that if the conduct of the servant engaged in its management is such as may reasonably produce that impression, and the passenger so understands it, and in the attempt to leave the coach at a place where no facilities are provided for his doing so, and whilst in the exercise of due diligence in

doing so, he is injured, the company will be liable." Hutchinson on Carriers, sec. 615.

In every case, all the facts surrounding it should be looked to, and from these a jury must determine as a question of fact whether the passenger is authorized to believe from the acts or words of the servants of the carrier that it is intended he shall alight from a car at a given time and place; and looking to all the facts in this case, we are not prepared to say that there was not sufficient evidence to justify the jury in finding that the appellee was authorized to believe that he was expected to alight from the car at the time and place at which he attempted to do so; nor can we say, looking to all the facts, which, under the verdict, we must assume to be true, that, in attempting to alight, the appellee did not use such care as a prudent person under like circumstances would be expected to use.

The court did not err in refusing to give the charges referred to in the eighth assignment; for it could not declare as matter of law that it was not negligence in the conductor of the train to absent himself from the train at the time and for the length of time he was shown to be absent; and, besides, it would have tended to divert the minds of the jury from other matters which perhaps had more bearing on the question of negligence than had the absence of the conductor.

The verdict is large, but the injuries received were of the most serious character, and in such cases, in the absence of some fact tending to show that the verdict is not the result of the honest and deliberate judgment of the jury as to the extent of injury done to the party complaining, this court has no power to set the verdict of a jury aside.

We cannot say that any such fact appears in this cause, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered October 28, 1884.]