## McBRIDE & COMPANY *v.* MACON TELEGRAPH PUBLISHING COMPANY.

1. Rejecting the answer to a general and final interrogatory calling upon the witness to state all he knew that would benefit either party is not cause for a new trial, when all the material matter covered by the excluded answer has been fully and distinctly brought out in the answers to the preceding interrogatories. If the evidence contained in such answer was of a nature not suggested by any of the other interrogatories, this fact would of itself be a good reason for not allowing the answer to be read in evidence.

2. There was no error, on the trial of an action upon a written contract, in allowing the defendant to prove by parol the truth of a plea which alleged, in effect, that the contract sued on did not contain the agreement actually made between the parties, that the maker was induced to sign by the false and fraudulent representations of the other party as to the contents of the instrument, that these representations were made for the purpose of deceiving the party signing, and that the latter, being thus deceived, executed the contract because of such representations and in the belief that they were true.

3. Delay for one or more terms in filing a plea setting up the real defense upon which the defendant, in a civil action, finally relies and insists, is, where the evidence as to the truth of such plea is conflicting, generally legitimate matter for comment by counsel, and may be considered by the jury, in the light of all the facts and circumstances, in passing upon the merits of such defense. In a case where it is manifestly proper for them to do so, the trial judge should not give an instruction which, in effect, entirely eliminates such matter from their deliberations; nor is what is said above restricted to those cases only in which the plea so relied upon is inconsistent with pleas previously filed. In giving the rule herein laid down a practical application, much must necessarily be left to the discretion of the presiding judge, who should take care not to allow the trial to degenerate into an investigation of minor questions which are merely collateral to the main issue, and who should allow the defendant an opportunity to be heard when his conduct in this respect is apparently open to serious attack.

4. In the present case, the charge of the court bearing upon the matter above dealt with, in view of the entire record, was inappropriate and erroneous.

SIMMONS, C. J., dissenting.

Argued February 23, — Decided June 10, 1897.

Action on contract. Before Judge Felton. Bibb superior court. April term, 1896.

*Hardeman, Davis & Turner*, for plaintiffs.
*Dessau & Hodges*, for defendant.

FISH, J. 1. In a set of interrogatories sued out by the

plaintiffs in error, the witness, after being specifically interrogated with regard to various matters, was asked to ":State all the facts, as fully as if especially interrogated with reference thereto, that will enure to the benefit of the plaintiff or the defendant in this case." Strictly speaking, this was not an interrogatory at all, but a mere request or demand for general information in addition to that sought to be elicited by the preceding specific questions propounded to the witness. We can not approve of this method of examination, as applied to a witness whose testimony is taken by interrogatories, notwithstanding it may be in accord with a practice commonly pursued by counsel in this State. Every interrogatory addressed to a witness should be "sufficiently explicit to indicate to the opposite party the nature of the testimony expected." *Head* v. *Bridges*, 67 *Ga.* 228. Obviously, a full and intelligent cross-examination of the witness is not possible, unless the questions propounded to him on his direct examination indicate with reasonable certainty the particular points as to which his testimony is desired. As strict matter of right, therefore, a party suing out a set of interrogatories can not claim that the response of the witness to such a sweeping interrogation (if it may be called such) as that above quoted has been legitimately drawn forth, and is in consequence admissible in evidence. On the other hand, if the reply of the witness does not include matter not suggested by the preceding interrogatories put to him, the opposite party will not have been prejudiced by an abridgment of his right to a full opportunity to cross-examine the witness, and accordingly can not justly complain in the event the court declines to rule out the testimony thus elicited. Under such circumstances, the trial judge may very properly exercise his discretion in the premises, to the end that complete justice may be done as between the respective parties to the litigation.

Certainly in the present case, even if the answer objected to can be said to have been improperly excluded, the error (if any) thus committed was one without injury to the plaintiffs; for the record before us shows affirmatively that every material fact thus made to appear was fully and distinctly brought out

by other answers of the witness, made in response to specific questions propounded to him, which answers the court admitted in evidence.

2. The defense mainly relied upon was, that the written instrument sued on did not correctly set forth the contract actually entered into between the parties, and that the defendant's signature thereto was obtained through fraud practiced upon it by the plaintiffs' agent. In this connection, it was alleged that this instrument was hastily signed by the defendant's general manager, without his reading the same, under the following circumstances: The plaintiffs' agent, "taking the said alleged contract in his hand, fraudulently pretended to read the said alleged contract so that it comprised the agreement that had been made between said agent and the business manager of this defendant company, thereby fraudulently pretending and holding out to the said defendant's manager that said paper offered for his signature in truth and in fact contained said agreement and contract really made between the parties," the defendant's manager "accepting the said agent's reading thereof as the correct reading of said contract." Evidence in support of these allegations was introduced on the trial, and the failure on the part of the defendant's manager to himself read the instrument before signing the same was explained by showing that the plaintiffs' agent represented that he was in a hurry, as he desired to catch a train about to leave the city and wished the matter closed up before he left.

If this be the truth of the transaction, obviously the plaintiffs' agent perpetrated a palpable fraud upon the defendant. "It is a universally recognized doctrine, supported by all respectable text-writers and upheld in every well-considered case bearing upon this subject, that where a party has been induced to enter into a contract by a wilful fraud on the part of the other party, calculated to deceive and which does deceive, the defrauded party may set up the fraud in his defense to an action upon the contract." *Epps* v. *Waring*, 93 *Ga.* 768. "It is not the duty or business of the courts to relieve parties from their gross negligence in making their contracts." *Bostwick* v. *Duncan, Johnston & Co.*, 60 *Ga.* 387. But we are not pre-

pared to say this latter rule should be held to apply under the peculiar facts and circumstances of the present case. On the contrary, previous adjudications by this court would seem to point unmistakably the other way. *Angier* v. *Brewster*, 69 *Ga.* 362; *Chapman* v. *Atlanta Guano Co.*, 91 *Ga.* 821; *Wood* v. *Cincinnati Safe & Lock Co.*, 96 *Ga.* 120. Surely, where there is grave doubt as to the justice of applying this rule, it should not be allowed to outweigh the general doctrine above stated, that "the defrauded party may set up the fraud in his defense to an action upon the contract," the purpose of the rule being, not to afford protection to a wrong-doer, but merely to discourage and discountenance complaints on the part of persons who offer no satisfactory excuse for their improvident omission to use the means at their command to guard themselves against imposition. It follows, of course, that it was the right of the defendant to prove by parol evidence the terms of the contract alleged to have been actually entered into, the proper foundation for the introduction of such proof having been laid by first offering evidence in support of its contention that its manager was induced by fraud to sign the instrument sued on, which did not correctly recite the agreement to which he had assented.

3, 4. At the appearance term of the case, the defendant filed an answer the practical effect of which was merely to deny each and every allegation contained in the plaintiffs' petition. Not until the case was called for trial did the defendant set up the defense of fraud above mentioned, although an entire term of court had intervened between the appearance term and that at which the case was tried. In argument before the jury, counsel for the plaintiffs commented upon the tardiness of the defendant in setting up this defense, which, if true, they insisted must surely have been known to defendant at the time it filed its original answer. The purpose of counsel's argument on this line was to break the force of the testimony delivered by the defendant's manager, who testified concerning what passed between himself and the agent of the plaintiffs contemporaneously with the signing of the instrument sued on; the contention of counsel being, in effect, "that it was a necessary infer-

ence that he had forgotten," at the time the defendant's original answer was filed, what had really occurred between himself and the plaintiffs' agent, and having thus forgotten "the most material fact in connection with the case for such a length of time," his evidently imperfect recollection should be considered by the jury in weighing his testimony against that delivered by the plaintiff's agent, who gave an altogether different account of the transaction. Complaint is made that the court, in charging the jury, deprived the plaintiffs of all benefit of this contention, by giving the following instruction: "The fact that the pleas were filed at different times or different terms of the court, or made such different lines of defenses or different matters of defense, makes no difference to you in the trial of the case. The petition, and the pleas filed by the defendant, constitute the respective claims of each of the contending parties; they are the pleadings in the case under which the evidence is submitted; they are the contentions · . . of the different parties; and though the pleas may be—the court does not state they are, but though they may be—if they are inconsistent with each other, that does not operate against the defendant company; they are merely the statement of their case under which they introduce testimony, and with them you have to do only as they throw light upon the contentions of the different parties and as they manifest the contentions of the parties as illustrated by the evidence introduced by each."

We do not think this charge was authorized by, or adapted to, the peculiar facts of the present controversy. The pleadings filed by the defendant were regularly before the jury, to be considered along with the evidence for any legitimate purpose. They necessarily showed the date of filing of each of the defenses relied on, and themselves suggested that the allegations of fact therein contained must, if true, have been known prior to the filing of the plaintiffs' petition. We think a delay of one or more terms in bringing forward the main defense upon which a party finally elects to rely, when there is nothing going to show that it was not previously well known to him, is of more or less probative value in determining the truth of the matters alleged, where the evidence in regard

thereto presents a conflict and thus brings directly in issue the bona fides of the defense so tardily interposed. In such a case, it is perfectly legitimate for counsel to direct the attention of the jury to the apparently suspicious circumstances attending the presentation of the defendant's side of the controversy, which seem to negative that he is acting in good faith in thus conducting his defense. Such, at least, is the view entertained by a majority of the members of this court as at present constituted. See, in this connection, *Western & Atlantic R. R. Co.* v. *Morrison,* decided at the present term, in which a carefully prepared and elaborate opinion has already been filed by Presiding Justice Lumpkin, and which may therefore be here referred to, although the present decision stands first in the order of rendition. (Ante, 320.) If our position upon this question be correct, it follows, of course, that it is manifestly improper for a trial judge to utterly destroy the beneficial effect to be derived from a legitimate argument on this line, by practically instructing the jury that they are to pay no attention thereto in arriving at their verdict. Nor are we to be understood as holding that only in those cases where the defense upon which the defendant finally elects to rely is inconsistent with pleas previously filed by him, will counsel be at liberty to comment before the jury upon the seeming lack of pure motives in the conduct of the defendant's cause. The case at bar furnishes an illustration in point; for while the defendant company really filed no inconsistent pleas, we think the unusual manner in which the main defense was brought forward suggested and authorized the argument presented before the jury by counsel for the plaintiffs.

No precise and unbending rule can be laid down concerning the extent to which counsel should be indulged in the exercise of their undoubted right and duty to fully present to the jury, in behalf of their clients, every contention which may properly and legitimately be urged. Accordingly, it must necessarily be left largely to the presiding judge to determine, in any particular instance, whether or not an abuse is being made of the privilege accorded to counsel in this respect. In the exercise of his discretion, care should be taken by the judge not to al-

low the trial to degenerate into an investigation of unimportant and trivial questions which are merely collateral to the main issue to be decided; and in every case the defendant should, of course, be afforded a full opportunity to be heard, in order that he may meet, if he can, any attack made upon him regarding the manner in which he has presented and conducted his defense.

The conclusion we have reached in the case now before us is that, in view of the entire record, the charge of the court above quoted was inappropriate and erroneous, and for this reason the case should undergo another investigation.

*Judgment reversed. All the Justices concurring, except*

SIMMONS, C. J., dissenting. By express statute, in this State, either party to a civil proceeding may, "at any stage of the case, as matter of right," amend his pleadings. Civil Code, § 5097. This being so, where a defendant, in a proper exercise of his legal right so to do, at the trial amends his original plea by setting up other pertinent matters of defense, the mere fact that some of the grounds of defense thus introduced were not specifically pleaded at the first, but were delayed until a subsequent term of the court, is not a legitimate subject-matter of comment by opposing counsel in his argument before the jury. In availing himself of the privilege conferred upon him by law of amending his pleadings "at any stage of the case," a defendant can not be deemed to have subjected himself to an insidious attack concerning his good faith in thus presenting his defense; for no unfavorable inference can arise against a party so long as he is acting strictly within his legal rights. Inquiry into the reasons attending his failure to urge his full defense in the first instance, and upon the first opportunity presented, would introduce into the case a purely collateral issue, calculated rather to confuse than enlighten or aid the jury in determining whether or not his defense as alleged be true, which is the main and paramount issue they are called upon to try. Therefore, where the opposite party has improperly sought to prejudice the minds of the jurors by making unfavorable comments upon the tardiness of the defense set up by amendment, it is eminently proper for the trial

judge to instruct them that this is a matter as to which they are not called upon or authorized to pass, and that they are to look to the pleadings solely for the purpose of ascertaining the issues therein presented for their determination.