Missouri, Kansas & Texas Railway Company v. T. W. Follin.

Decided May 17, 1902.

**1.—Railway Company—Negligence—Issue for Jury.**

Where plaintiff, a fireman, was injured by reason of the engine turning into a side track because of a switch left open and unguarded by a local train switching there, and the evidence was conflicting as to whether it was the custom to so leave switches open without putting out a flagman, the question of negligence on the part of the crew of the local train in failing to place a flagman at the switch was for the jury.

**2.—Same—Violation of Rule.**

Since the violation by an employe of the rules o. the employer is not negligence per se, the question of whether or not there was negligence in such violation is for the jury.

**3.—Same—Assumed Risk—Fireman and Engineer.**

Where a fireman was injured by reason of the engine running into an open switch, the fact that the engineer was violating the rules in not having the train

under control at the time did not, as matter of law, charge the fireman with having assumed the risk of the resulting accident. See evidence held not to show that he had assumed such risk.

**4.—Same—Violation of Rules Elsewhere.**

Evidence of the rate of speed at which the train passed stations on another branch of defendant's road was properly excluded as irrelevant where it was not shown that the rules obtaining there was the same as those obtaining where the accident occurred.

**5.—Pleading and Proof—Personal Injuries.**

Where plaintiff's petition in an action for personal injuries alleged that plaintiff's "neck, arms, chest, back, sides, legs, abdomen, and all the organs thereof, as well as all the muscles, ligaments, and nerves of his body, were greatly broken and torn, rendering him a cripple," this was sufficient to admit evidence of injury to the kidneys and urinary organs and the results following it.

**6.—Remarks of Counsel.**

Where a witness for defendant who had been plaintiff's physician testified that he expected defendant to pay him $100 as his usual fee whenever he appeared on the witness stand, remarks of plaintiff's counsel to the effect that the witness had been bought up by the defendant to testify in its favor do not present reversible error.

Appeal from Grayson. Tried below before Hon. Rice Maxey.

*T. S. Miller* and *Head & Dillard,* for appellant.

*Wolfe, Hare & Semple,* for appellee.

RAINEY, Chief Justice.—Suit by appellee to recover of appellant damages for personal injuries alleged to have been caused by the negligence of appellant. Appellee was fireman on one of appellant's locomotives pulling a freight train north bound when it was unexpectedly turned onto a side track at Pilot Point by reason of an open switch, and to avoid the consequences of a collision thus made imminent he jumped therefrom and sustained personal injuries. Defendant pleaded the general denial, contributory negligence, and assumed risk. Judgment was rendered in favor of plaintiff, from which defendant prosecutes this appeal.

Complaint is made of the sixth paragraph of the court's charge, which left it for the jury's determination whether or not it was negligence in the crew of No. 67 leaving the switch open and in failing to put out a flagman to warn approaching trains. The proposition advanced by appellant is: "The evidence raised the issue that it was the custom for local train crews like No. 67 to leave switches open while doing switching, expecting approaching trains to guard against one, and under such circumstances it was error for the court to charge the jury that negligence in leaving the switch open would render the defendant liable, without regard to the assumption of risk from this source by plaintiff." Some of appellant's witnesses testified that it was the custom to leave switches open and not place flagmen when trains were switching in the manner as was done by the crew of No. 67, while on the other hand

plaintiff's testimony shows that such custom did not prevail, but that if the switch was not closed it was the duty of the crew of No. 67 to have a flagman to warn approaching trains. There is no evidence showing that plaintiff had knowledge of such custom (unless it could be inferred from the fact that he had been employed as fireman for some time), while the effect of his testimony is that he knew of no such custom. Train No. 104, on which plaintiff was employed, was a through freight train going north and had the absolute right of track. No. 67 was a local freight train going south, and plaintiff had information that it would probably be at Pilot Point when his train arrived. Except that No. 67 was a local there was no evidence tending to show that plaintiff had reason to suppose that it would have any switching to do at Pilot Point. If the testimony introduced by plaintiff to the effect that if the switch was left open it was the duty of the crew of No. 67 to place a flagman there, and plaintiff had no knowledge of a contrary custom, then said crew was guilty of negligence in failing to station a flagman, which entitled plaintiff to recover if he was not guilty of contributory negligence. The court charged on contributory negligence. The evidence raised the issue presented by the court in said paragraph of the charge, and there was no affirmative error in the manner in which it was presented.

Under the circumstances of this case it was not error in the court in submitting to the jury the question of negligence in violating the rules of defendant. The violation by an employe of the rules of an employer which may cause injury to the employe is not necessarily negligence per se. Railway v. Mayfield, decided May 10, 1902, by this court, and authorities there cited.

The court refused the following special charge, which action is assigned as error, viz: "If you believe from the evidence that W. D. Mayfield was coming into Pilot Point without the engine under control, and that under defendant's rules it was his duty to keep it under control at the place where he was operating it, and that before this trip he had violated such rules as to having his engine under control at places where it was his duty to so have it, and that plaintiff, before starting on the last trip, knew this fact, and if you further believe that defendant's engineers were in the habit of violating the rules with regard to having their engines under control, and plaintiff knew of the fact and yet continued to act as fireman without protest or objection as to this violation of the rules, he would assume the risk of such violation, and if he was injured solely because of such violation of the rules on the part of Mayfield, if such violation there was, you will return a verdict for defendant." This charge, we think, is not the law, in that it holds as a matter of law that plaintiff had assumed the risk of the accident if the engineer at the time was violating the rules of appellant in not having his train under control. Whether or not under the circumstances the risk was assumed was a question for the jury. No rule was shown fixing the rate of speed trains should run in approaching a station. The requirement

is that the train should be under control. The train in this instance when it ran into the switch was running about twenty miles an hour. The evidence was conflicting on the issue as to its being under control. Plaintiff testified: "I expect we passed several stations on that trip that day at the rate of thirty miles an hour. We had gone down to Hillsboro from Denison via Greenville, not over this track, the day before. As fireman I was under the instructions of the engineer, and had nothing to do with the rate of speed at which the train had to be operated. I had no authority to control the engineer or engine. If Engineer Mayfield was violating one of defendant's rules by going into Pilot Point at that rate of speed, I was not aware of the fact. It was the custom to go through there that way, and had been the custom ever since I had been running over that track. I suppose the same rule has been in force and printed in the time card all that time. I had been through Pilot Point prior to this accident and through other stations with engineers when the train would be running twenty or thirty miles an hour, and did not raise any protest against it. I simply went on with them that way. I did not have the right to protest. I came through some stations between Fort Worth and Pilot Point with Mr. Mayfield that day the same way. As fireman, I generally got my instructions as to my duties verbally from the engineer. I so got most of them. There is no rule anywhere in the printed rules that mentions the fireman or his duties at all. My duties are received verbally outside of the printed rules." This evidence does not show that plaintiff assumed the risk incident to the accident. If the evidence should be considered sufficient to show that Mayfield habitually violated the rule, it is not shown that plaintiff knew of it before starting on this trip. It is not shown that Mayfield violated the rules on the run the day before on the trip from Denison to Hillsboro via Greenville, and if it be conceded that Mayfield violated the rules in passing stations on the day of the accident before reaching Pilot Point, that fact, under the circumstances, did not impose upon plaintiff the risk of the negligent act of leaving the switch open. See Railway v. Williams, decided by this court March 29, 1902. That appellee had gone through Pilot Point and other stations with other engineers when the train would be running at twenty or thirty miles an hour and raised no protest does not show that he knew Mayfield would violate the rules. Nor does plaintiff's testimony to the effect that it was customary to run trains at that rate of speed at stations conclusively place upon him the assumption of the risk of running into an open switch at that time, the evidence not conclusively showing that he ought to have anticipated such an emergency.

Appellant complains of the action of the court in refusing a special charge to the effect that the jury in estimating damages should not consider any injury to his kidneys or urinary organs, nor injury that caused diabetes, etc. The contention is that the allegations of plaintiff's petition as to injuries did not include injuries to kidneys or urinary organs nor any injury that might result from diabetes. In this connection the allegations of plaintiff's petition were, "that his neck, arms, chest, back,

sides, legs, abdomen, and all the organs thereof, as well as all the muscles, ligaments, and nerves of his body, were greatly broken, bruised, lacerated, and torn, rendering him a cripple," etc.   In the absence of special exceptions to the allegations they were broad enough to admit evidence of injury to the organs of the abdomen, the kidneys and urinary organs being embraced therein, and the results that followed from such injuries. Railway v. Mayfield, supra, and authorities there cited.   There was no error in refusing said charge.

Appellant offered testimony to show that on the trip the day before from Denison to Hillsboro, via Greenville, the train on which Mayfield was engineer and plaintiff fireman had passed by switches, water tanks, and other places at the rate of twenty or thirty miles an hour.   Upon objection this testimony was excluded, the grounds urged thereto being that a different rule obtained on that branch of the road from the one in force on the track where the accident occurred, and that the same was irrelevant and immaterial.   It is insisted that the evidence was material, not only to show that Mayfield violated the rules of the company in the manner in which he should run, but also to show a negligent habit of running on his part, and the assumption of risk by the plaintiff in continuing to work with Mayfield without protest.   We are of the opinion that the testimony was properly excluded.   Different rules obtaining on the branch via Greenville, and it not being shown that they were the same as obtained on the joint track, and no custom or circumstance being shown that the running at such a rate on that branch was reckless or negligent, the testimony formed no basis upon which a conclusion could be legitimately predicated that the rate of speed at the time of the accident was a violation of the rules, or that plaintiff assumed the risk.

Error is predicated upon remarks made by plaintiff's counsel in his closing argument to the jury, viz:   "Gentlemen, there is a hiatus in our testimony.   We have shown by Dr. Rutledge what the plaintiff's condition was prior to the time when Dr. Booth commenced treating him, and we have here, by Dr. Booth himself and by Dr. Rutledge, shown you what his condition is to-day, but we are unable to show you his condition as it was while Dr. Booth was treating him.   The reason of this is, the railway company has been plowing with our heifer.   The plaintiff in this case did not know until last week that Dr. Booth was going to go upon the witness stand and testify that there was not now and never had been anything the matter with him.   I am warranted in saying this, because it appears from the evidence given by Dr. Booth himself that plaintiff one week ago went to him voluntarily, exposed his person, and requested him to make an examination of him.   Surely if plaintiff had known that Dr. Booth was going to say there was not nor ever had been anything the matter with him, he would not have done this."   Whereupon Mr. Dillard, one of the counsel for defendant, interrupted counsel for plaintiff by remarking, "You don't mean to say that he wanted to put up a job on the railroad?"   Whereupon Mr. Wolfe replied:   "I mean to say that $100 or some other consideration which the railway

company has given to Dr. Booth has caused him to give testimony that he has here given in this case." Whereupon Mr. Dillard, counsel for defendent, said that he excepted to the language and reply of Mr. Wolfe, because unwarranted by the evidence and calculated to prejudice the jury. The court did not reprove Mr. Wolfe for the language nor in any way exclude it from the jury, or instruct them as to the language. The testimony shows that Dr. Booth had been plaintiff's attending physician for several months after the injury. Dr. Booth testified: "I came to court at the instance of the railroad company. I expect them to pay me $100, which is my usual fee. They have not paid it. There has been no agreement to pay me that amount. I was brought here under the process of the court. Whenever I appear on the witness stand I want to get $100. I had to come in answer to the subpoena." In view of the testimony we are of the opinion that the remarks of counsel were not of such a character as to require a reversal of the judgment.

The evidence supports the verdict and judgment, and there being no reversible error shown, the judgment is affirmed.

*Affirmed.*

Writ of error refused.