## MILLER v. WINN et al.

### No. 12267.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 15, 1930.

Rehearing Denied March 22, 1930.

W. L. Scott, of Graham, and H. S. Garrett, of Fort Worth, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, R. S. Ragsdale, of Burkburnett, and G. E. Garner, of Little Rock, Ark., for appellees.

CONNER, C. J.

This case appears before us on appeal for the second time. A full statement of the circumstances and the relation of the parties may be found in the opinion of Mr. Justice Dunklin of this court as reported in the 8 S. W.(2d) 714 et seq. We will accordingly now only set forth such details and proceedings as we have concluded are pertinent to the questions raised on this appeal. The appellee Winn owned one-fourth, and defendant Miller three-fourths, of the $20,000 capital stock of the Olney Ice Company, a corporation. Winn instituted this suit, alleging, in substance, that about February 1, 1926, the defendant Miller and one M. B. Morgan, acting for the Morgan Utilities, Inc., a competitive concern, entered into the written agreement for the sale of such capital stock set forth in the opinion on the former appeal. It was alleged that Miller, in entering the contract, acted not only for himself but for the plaintiff, Winn, pursuant to authority previously conferred upon him; that the consideration had been deposited in escrow with the First National Bank at Olney. It was alleged that the stock was sold at its par value, and the plaintiff sought to recover the one-fourth part of the $20,000; both the Morgan Utilities, Inc., and the First National Bank of Olney being made parties to the suit. There were other allegations not thought to be now necessary to detail.

The defendant Miller filed general and special exceptions, a general denial, and spe-

cially alleged that Miller owned three-fourths of the capital stock; that one-fourth had been issued to Winn, and was held by the Farmers' State Bank of Burkburnett as collateral security for a loan; that he (Miller) had been authorized to sell the Winn stock for $5,000 if opportunity arose; that Morgan, acting for the Morgan Utilities, Inc., refused to buy the Winn stock after having been urged to do so, but did buy the Miller stock; and that the written contract entered into with Morgan, attached as an exhibit to the pleading, so operated, or that, if in legal effect it did not so provide, then it was ambiguous, or, if not ambiguous, that by inadvertence or mistake the wording that would have so shown was omitted.

The First National Bank of Olney appeared, set up the escrow proceedings, and revealed that it had paid Morgan the $15,000, and yet had $5,000 on deposit, which it tendered into court for disposition as the court should direct. The Farmers' State Bank of Burkburnett intervened, setting up its possession of the Winn stock as security for an indebtedness of Winn. The Morgan Utilities, Inc., appeared, and in substance co-operated with the plaintiff, Winn, in allegations to the effect that Morgan had bought the entire stock of Miller and Winn.

On the former appeal it was held, on reasoning given, that the written contract between Miller and Morgan was not ambiguous, but showed on its face as a matter of law an agreement on Miller's part to sell, and on Morgan's part to buy, all of the stock of the Olney Ice Company for a consideration of $20,000.

That part of the contract given controlling effect in the conclusion that the contract on its face showed an agreement on the part of Miller to sell all of the capital stock in the Olney Ice Company for a consideration of $20,000 reads as follows:

"State of Texas, County of Young:

"This contract made and entered into this day by and between R. R. Miller of Olney, Texas, part of the first part, and M. B. Morgan, of El Dorado, Arkansas, part of the second part, witnesseth:

"That Whereas the Olney Ice Company is a corporation, chartered and organized and existing under the laws of Texas, with an authorized capital stock of twenty Thousand ($20,000) Dollars, three-fourths (¾) of which is owned by R. R. Miller and one-fourth (¼) is owned or held by the Farmers State Bank of Burkburnett, Texas, for the consideration hereinafter recited, the said R. R. Miller does hereby contract, agree and bind himself to sell, convey, and deliver to M. B. Morgan, party of the second part, the aforesaid stock in the aforesaid corporation, subject to the terms and conditions and for the consideration hereinafter recited;

"That the total consideration for the said stock is to be paid by the purchaser, M. B. Morgan, to the seller, R. R. Miller, is ($20,000), twenty thousand dollars; ten thousand ($10,000) dollars cash upon consummation of this contract, and the remaining ten thousand ($10,000) dollars payable in six and twelve months from date, to be evidenced by two promissory notes in the sum of five thousand ($5,000) dollars each, each bearing 8 per cent interest per annum from date and payable to R. R. Miller."

The evidence on the part of Miller and in his behalf was to the effect that in the negotiations between Miller and Morgan it was understood by both that Miller's stock only was the subject of the sale, and that it was the intention of the parties and of the counsel who prepared the contract that it should so provide. There was also further testimony to the effect that the word "the," which immediately precedes the terms "aforesaid stock," following the recitation that Miller "does hereby sell, convey, and deliver to M. B. Morgan, party of the second part," was inadvertently and by oversight used instead of the term "his."

The case was submitted to a jury upon special issues. Those to which answers were given were as follows:

"Special issue No. 1: Before the contract between Miller and Morgan was reduced to writing did the said Miller and Morgan orally agree that Miller would sell and Morgan would buy only Miller's ¾ths of the stock of the Olney Ice Company for $20,000.00? Answer Yes or No. Answer No.

"Special issue No. 4: Did Winn and Miller enter into an agreement to sell all of the stock of the Olney Ice Company at par ($20,000.00), Miller to negotiate the same and each to receive his pro rata part of the proceeds? Answer yes or no. Answer Yes.

"Special issue No. 5: Did the Morgan Utilities Company, Incorporated, after the contract of February 6, 1926, go into possession of all of the properties of the Olney Ice Company and deny that the plaintiff was the owner of any stock therein and refused to recognize plaintiff as a stockholder? Answer Yes or No. Answer Yes.

"Special issue No. 6: If you have answered the above interrogatory 'yes,' then you will answer the following: Upon what date did the Morgan Utilities Company, Incorporated, go into possession of the properties of the Olney Ice Company as set out in the preceding issue? Answer, giving the date. Answer March 6, 1926.

"Special issue No. 7: What was the reasonable market value of Winn's stock as of such date? Answer in dollars and cents. Answer $5,000.00."

Upon the answers given the court rendered judgment in favor of the plaintiff, Winn, and

the intervener, Farmers' State Bank of Burkburnett, against the defendants R. R. Miller, the First National Bank of Olney, and the Morgan Utilities, Inc., in the sum of $5,400, with interest thereon from the date of the judgment at the legal rate and all costs of suit; providing, however, that, if the $5,400 deposited in the First National Bank of Olney by the Morgan Utilities, Inc., on the 7th day of February, 1927, with interest, be paid, said payment should satisfy the judgment as against all of the said defendants. It was further provided that any payment made under the judgment to the Farmers' State Bank should be for the benefit of S. W. Winn as a credit for the indebtedness of said Winn to said State Bank. The judgment further recited that the First National Bank of Olney had upon that day tendered into open court $5,400 and the stock in the Olney Ice Company in its possession, and it was directed that the same be paid and placed in the registry of the court subject to the orders of the court, and that upon payment thereof to the clerk said bank should be relieved from further liability.

To the judgment so entered the defendant Miller excepted and alone appeals.

■■ In a typewritten brief of some 267 pages appellant presents numerous propositions urging error in the proceedings below. A considerable portion of the brief is taken up with the contention that the contract on its face as a matter of law shows that the written agreement provided for the sale of only three-fourths of the $20,000 capital stock in the Olney Ice Company owned by Miller, and hence that we erred in holding otherwise in our former opinion. In this contention much stress is laid upon other provisions in the contract that we have not quoted in this opinion, but which fully appear in our former opinion, and to which reference may be made by those who may be called upon or wish to review that question.

2 R. C. L., bottom of page 223, par. 187, in part reads as follows: "It may be stated generally that a court of review is precluded from agitating questions which were propounded, considered, and decided on a previous review; the decisions agree that, as a general rule, when an appellate court passes upon a question and remands the cause for further proceedings, the question there settled becomes the 'law of the case' upon a subsequent appeal; the only mode for reviewing the decision on the prior appeal being by a motion for a rehearing."

In the case of Hocker v. Louisville & N. R. Co. (Ky.) 96 S. W. 526, it was held that the opinion delivered on a former appeal is the "law of the case." In the case of Neary v. Northern Pac. Ry. Co., 41 Mont. 480, 110 P. 226, it was ruled that a decision of the Supreme Court on appeal was the "law of the case" on a subsequent trial, whether right or wrong. In the case of Berger v. Metropolitan Press Printing Co., 61 Wash. 35, 111 P. 872, it was said that a decision of the Supreme Court on appeal was the "law of the case" governing the trial court on a subsequent trial. In Roberts v. Armstrong, by the Galveston Court of Civil Appeals, 212 S. W. 227, it was said, quoting from the headnote, that: "On subsequent appeal, Court of Civil Appeals will follow law as announced by decision on former appeal, where it has not been reversed or modified by Supreme Court." See, also, of like effect, M., K. & T. Ry. Co. v. Redus, 55 Tex. Civ. App. 205, 118 S. W. 208; Baker v. Williams (Tex. Civ. App.) 213 S. W. 986; Kimmell v. Edwards (Tex. Civ. App.) 211 S. W. 284. We do not wish to be understood as holding that under no circumstances would we be without power to again review a decision on a former appeal of a question of law. It is otherwise held if there appears distinguishing features which are material, or if the former decision is clearly wrong, for, as stated in Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152, the phrase "law of the case," as applied to the effect of a decision of an appellate court in an earlier appeal in the same case, merely expresses, in the absence of statute, the practice of courts generally to refuse to reopen what has been decided, and not a limit to their power. We have concluded that the proper construction of the contract under consideration was involved on the former appeal in this case, and that what we then said in relation to the legal effect of the terms used in the contract is not clearly erroneous, and that therefore we should adhere to the construction then announced without a reinvestigation or a rediscussion of the question. We think the trial court properly adopted the construction of the contract we gave it, and therefore correctly refused to submit tendered issues relating to the plea of ambiguity, and in effect correctly ruled that the sole material issue for determination on the trial was whether or not there had been a mutual mistake in the writing of the contract.

Another series of propositions assign error to proceedings indicated by the following bills of exception: Omitting formal and unnecessary parts, bill of exception No. 1 shows that G. E. Garner, counsel for the Morgan Utilities, Inc., after the plaintiff, Winn, had read his petition, requested permission of the court to later file some amended pleadings and for permission then to state orally to the court and jury the substance of what his pleadings would be, whereupon the request was granted, and, among other things, while so stating his pleadings, Mr. Garner stated as follows:

"It is our contention, Gentlemen of the Jury, that we bought all of the stock of both plaintiff Winn and R. R. Miller, defendant, and that the contract so shows, as a matter

of law, and I might state to you that the Court of Civil Appeals has already passed on this and held that this contract in this case, on its face, shows that we bought all of the stock."

This was objected to in behalf of appellant Miller as "incompetent, misleading and prejudicial."

Bill of exception No. 2 is to the effect that Mr. W. L. Scott, counsel for appellant, Miller, while testifying as a witness in behalf of his client, was thus questioned by Mr. Garner, to wit:

"Q. Since Mr. Miller came back and upbraided you about the contract that you claim was ambiguous, that he conveyed only his three-fourths, don't you know the Civil Court of Appeals has said that it did convey the whole interest? A. I object to this question for the reason that he has no right to tell the court here and the jury what some other court held; I object to that."

This was objected to as before, but the objections were overruled, and the witness was required to answer that: "Such was the holding of the Court of Civil Appeals." This bill of exception was approved with the following qualification, to wit: "This Bill of Exception approved with the qualification that it was admitted in answer of the defendants contention in pleading that on the face of the contract it showed that the intention was to convey only three-fourths of the stock in the Olney Ice Company."

Bill of exception No. 3 is to the effect that in the opening argument of R. S. Ragsdale, one of the attorneys for the plaintiff, Winn, and the Farmers' State Bank, said in the course of his argument to the jury: "Now, let me see that contract." Whereupon he took the report in which our former opinion is printed and said: "I will read this contract to you out of this book where the print is plainer and it is easier to read."

At this point counsel for the defendant Miller objected as before, which objections being overruled, Ragsdale continued, and read out of the law book the contract as printed, and then stated, addressing counsel for defendant Miller: "You see the Court of Civil Appeals has already passed on this very contract, and it held that the same showed on its face, as a matter of law, that Miller sold all of the stock, both his and that of the plaintiff Winn, to Morgan for $20,000.00, and that since the defendants are confronted with that decision, now they try to change their position in this law suit and pretend that there was a mutual mistake in order to get the same reformed, which is an after-thought and an effort to escape the effect of the opinion of the Court of Civil Appeals."

The court overruled the objections and approved the bill with the following qualification: "This Bill of Exception approved with the qualification that it was allowed by the court in answer to the testimony and pleading of counsel for the defendant that the contract on its face showed an intention to convey only three-fourths of the stock of the Olney Ice Company being only the stock of the defendant Miller."

Bill of exception No. 4 is to the effect that Mr. Garner in his argument, which immediately followed that of Mr. Ragsdale, said: "I am surprised at Mr. Scott, counsel for R. R. Miller. Why, he came in here accusing all of the witnesses of being forgers and perjurers, and has conducted this trial in a way to try to make it appear they were forgers and perjurers. He knows, as well as he knows anything else, that the Court of Civil Appeals has already settled the question about this contract, and held that it showed on its face that Morgan Utilities, Inc., bought all of the stock in the corporation for $20,-000.00 and that at the other trial of the case I tendered this last $5000.00 in court which was refused, now he changes his tactics, and in this trial, set up the defense that there is and was a mutual mistake. He did not do that in the first trial, but since the Court of Civil Appeals held that the contract showed on its face that we (meaning Morgan Utilities) had bought all of the stock of both his client and Winn, and seeing that he had no defense left but to plead mutual mistake, then he comes into court at this time with that kind of defense and denounces everybody as forgers and perjurers that is not on his side. He did not go on the stand in the other trial of this case. He did not testify. He did not put any other witnesses on the stand to show mutual mistake nor did he introduce any evidence tending to show mutual mistake but now as that is the only defense left him, he makes this dodge."

This argument was likewise objected to on the ground that the same was "incompetent, prejudicial and calculated to mislead the jury," and moved the court to exclude the same. As to this, the bill recites that a part of the motion to exclude "was sustained by the court, that is to say, that part pertaining to what occurred in the other trial, the Court having excluded that, and instructed the jury not to consider what occurred on the other trial, but did not exclude the remark pertaining to the holding of the Court of Civil Appeals as above set out to the effect that the contract showed on its face that Morgan Utilities, Inc., bought all of the stock in the corporation."

This bill further recites that, following the exclusion of the remarks of counsel of what occurred on the other trial, Mr. Garner, in continuing his argument, further stated that: "In the other trial, his defense was that the contract was clear that he had sold only three-fourths. That was his defense in chief, but his alternative defense was that if the

contract did not show that, that then it was ambiguous, admitting of the introduction of parol testimony, and that the parol testimony showed that it was ambiguous, but the Court of Civil Appeals knocked that defense out from under him, and now he cops up a third defense, that is, that it was a mutual mistake, and so to show that, he goes on the stand to testify to a mutual mistake, I don't want to use the short and ugly word about anybody who has testified in this case, but I would rather be generous and throw the mantle of charity around them, and say that their interest' has just colored their judgment. I knew Mr. Scott a long time ago. He is a shrewd lawyer. 'He knows how to write a contract, and I don't think he made any mistake in the contract. I think he wrote it just like the parties agreed, and now, in order to help Miller retain the $5,000.00 that belongs to Winn, he pleads and testifies that there was a mutual mistake, which he was driven to after the Court of Civil Appeals cut off every other means of defense he had."'

Bill of exception No. 4 was approved with the following qualification: "This Bill of Exception approved with the qualification that it was considered by the court in answer to the testimony and pleading of counsel for the defendants that the contract on its face showed an intention to convey only ¾ of the stock of the Olney Ice Company and only that part of the stock of said company owned by the defendant Miller."

In appellant's answer, among other things, he alleges that by inadvertence, etc., "the" was inserted instead of "his," and that, although Morgan knew he only attempted to buy three-fourths of the stock, he now "fraudulently, corruptly, falsely, deceitfully and wickedly" seeks to take advantage of the ambiguity, etc. And the testimony of Mr. Scott tended to support these allegations, he insisting in his testimony that the contract as written showed on its face that only three-fourths of the stock was sold, and further, when told by Mr. Winn and others that Morgan was claiming that all of the stock was sold, said: "M. B. Morgan would not say he negotiated for any more than three-fourths. I didn't believe Morgan would do it. They would have to show—because up to that time I had faith in the man. * * * I thought I was representing an honest man and didn't think he would resort to what he has resorted to—I changed my mind about representing an honest man after this came up."

It further appears that among other things the plaintiffs offered a copy of a resolution of the Olney Ice Company dated the 16th day of February, 1926, in which it was recited that all of the stock of the Olney Ice Company was represented, Miller having 150 shares and Winn 50; that "upon motion duly made and seconded it was unanimously agreed to sell the Olney Ice plant at par. It was further agreed that Mr. R. R. Miller, president of said company, is to negotiate the sale of said ice plant or the stock of same, at par, and each stockholder is to receive full proceeds of the sale of his stock from the purchaser. The affairs and general conditions of the plant and the present outlook of the business was discussed fully, everything being in a very satisfactory condition." This resolution purported to have been signed by R. R. Miller as president and general manager and S. W. Winn as secretary. When this resolution was offered in behalf of the plaintiff, Mr. Scott, as shown by the trial court's explanation to bill of exception No. 4, objected to the introduction of the resolution on the ground that it was "pure unadulterated forgery." The record also discloses that, while appellant, Miller, in the former trial pleaded among other things mutual mistake, neither Mr. Scott nor any other witness testified in support of the plea.

█ The exceptions were very general in character, and on the whole we have not felt able to say that the court erred in overruling them or that the proceedings complained of in the several bills of exception are of such a character as to require a reversal of the judgment. It is to be noted that the construction of the contract by all authorities was for the court, and it is apparent from the record, and we think must have been so to an intelligent jury such as the law requires, that the contention merely was that as written the contract in legal effect amounted to an agreement for the sale of all the stock, but that it was nevertheless subject to attack and to be otherwise read on proof of the mutual mistake alleged. All parties must have understood that the very fact of reversal showed that neither this court nor the trial court intended to hold that the written agreement was conclusive as against Miller. It was still left open to attack on issues actually submitted. The allegations in Miller's answer and the testimony of Mr. Scott to the effect that the contract as written on its face showed but three-fourths of the stock was in contemplation would seem to justify the answer on the part of counsel representing Mr. Winn and Morgan Utilities, Inc., that it had been held otherwise. So, too, the allegations of appellant in his answer and Mr. Scott's emphatic testimony to the effect that the several parties who authenticated the resolution of the Olney Ice Company were forgers and perjurers would quite naturally call for some counter attack; perhaps, of the same nature.

In the case of McBride v. Macon Telegraph Pub. Co., 102 Ga. 422, 30 S. E. 999, it was held proper to comment on the fact that the real defense urged at the trial was not set up in the pleadings for a considerable length of time.

In the case of East St. Louis Ry. Co. v. O'Hara, 150 Ill. 580, 37 N. E. 917, it is pointed out that, where there is a conflict in the testimony, counsel for either side may accuse the witnesses for the other of testifying falsely.

In the case of Sterling v. Railway Co., 38 Tex. Civ. App. 451, 86 S. W. 655, this court, speaking through Judge Speer, held it proper, under the facts of the case, to refer to the witnesses as "gentle cut-throats."

In the case of M., K. & T. Ry. Co. v. Follin, 29 Tex. Civ. App. 512, 68 S. W. 810, where the evidence showed that the physician for the railway company was being paid $100, Judge Rainey held it not improper for plaintiff's counsel to say that the testimony had been bought and was not to be believed.

In the case of Maffi v. Stephens, 49 Tex. Civ. App. 354, 108 S. W. 1008, Judge James held that an argument to the effect that plaintiff, since the taking of the first evidence, had examined the record and found that she was forced to testify differently, was not improper.

In the case of Dahlstrom v. Railway Co., 108 Mo. 525, 18 S. W. 923, it was held proper for counsel for plaintiff to refer to the fact that on the first trial defendant introduced no witnesses.

In the case of Jaffe v. Deckard (Tex. Civ. App.) 261 S. W. 395, Judge Hall called attention to the fact that there are many cases showing that counsel have the right to make retaliatory remarks.

Upon the question of retaliatory remarks, see, also, the opinion of Judge Speer in the case of Davis v. Hill (Tex. Com. App.) 298 S. W. 526, citing Texas, etc., Ry. Co. v. Garcia, 62 Tex. 285. This latter case, in an opinion by Judge Stayton, is of peculiar interest, in view of the question in the case at bar. Counsel for plaintiff was permitted in reply to counsel for defendant to read and discuss authorities upon a certain question wherein defendant had read and discussed authorities; so also here, where Mr. Scott seeks to give his opinion to the jury as to what the contract means, it would seem to be proper to show what it actually means according to the construction of the courts.

■■ We think the court properly placed the burden of proof upon the appellant, Miller, to establish by a preponderance of the evidence the mutual mistake alleged and the affirmative of special issue No. 1. Nor do we think the court erred in his failure to submit appellant's requested issues relating to allegations in one count of the plaintiff's (Winn's) petition to the effect that he (Miller) and Winn were operating the ice business as partners, and that he (Miller) occupied a trust relation, and in the matter of the agreement with Morgan acted fraudulently in violation of such trust relation. The

judgment of the court below does not rest upon any such theory, nor do we, in affirming the judgment as shall presently appear, determine the case on such contentions.

■ The remaining propositions in behalf of appellant in various forms attack the sufficiency of the evidence to sustain the verdict and judgment. We deem it unnecessary to quote from the evidence largely. It has all been examined, however, carefully, and it is unquestionably sufficient to sustain the judgment. The testimony of Mr. Winn, of Mr. Morgan by deposition, and of a Mr. J. M. Russell, who it appears was in the employ of Mr. Miller at the time of the writing of the contract, all is in effect and substance in direct opposition and contradiction of the testimony of Mr. Miller. The evidence further shows that the written contract before being signed had been submitted to both Miller and Morgan, and revised one or more times, thus warranting the conclusion that the contract as written expresses the true agreement of the parties. Mr. Morgan was very explicit in his testimony to the effect that they were operating a competitive business in Olney, and that his purpose was to buy the entire property—all of the stock, not a part of it only. So that we conclude that these final contentions as well as others should be overruled and the judgment affirmed.

### On Motion for Rehearing.

The able counsel for appellant have presented an elaborate and forceful contention that we erred in adhering to the conclusion expressed in our opinion on the former appeal that the contract declared upon in this case showed on its face, as a matter of law, an agreement to sell the entire stock of the Olney Ice Company. While we are yet inclined to the view on that question expressed in our opinion in the present appeal, yet we are not so impressed with the materiality of the question as counsel seem to be. If the contract, as a matter of law, as written, does not show an agreement to sell all of the stock, it certainly cannot be correctly said that it, as a matter of law, shows an agreement to sell only the three-fourths share of stock owned by Miller. In that event at most the contract must be treated either as ambiguous or as having been mistakenly written. Of these defenses it seems to us appellant was given full opportunity of presentation. Whether the contract be ambiguous or whether a mutual mistake was made in writing the contract materially depends upon whether before the contract between Miller and Morgan was reduced to writing Miller and Morgan had agreed to the sale and purchase of Miller's three-fourths of the stock only. This issue was submitted to the jury upon full evidence of all parties to the contract, and by the jury found in favor of the appellees.

We therefore feel disinclined to again review or discuss the question or to certify it to the Supreme Court, particularly in view of the fact that a remedy by writ of error is apparently available to appellant. On other questions presented in the motion for rehearing we adhere to what was said by us in our original opinion, and accordingly the motion for rehearing and to certify will be overruled.