## DAVIS SEWING MACHINE COMPANY *v.* CRUTCHFIELD.

1. An affirmance or ratification of a contract which is voidable for fraud, in order to bind the party making it, must be made with actual knowledge of the fraud, or under such circumstances that the exercise of ordinary diligence would lead to its discovery ; and whether or not such diligence has been exercised is a question for the jury.
2. The verdict was warranted by the evidence, and the court did not err in overruling the certiorari.

Submitted June 4, — Decided June 29, 1903.

Certiorari.   Before Judge Foster.   Greene superior court.   September 8, 1902.

*James Davison*, for plaintiff.   *Samuel H. Sibley*, for defendant.

CANDLER, J.   The Davis Sewing Machine Company, a non-resident corporation, brought suit against Emily Crutchfield in a justice's court of Greene county.   The case was tried before a jury in that court, who found for the defendant, and it was then carried by certiorari to the superior court.   The judge of the superior court overruled the certiorari, and the plaintiff excepted.   The plaintiff introduced in evidence, as the basis of its suit, a promissory note for $65, signed by the defendant, dated October 20, 1898, and reciting that it was given in payment for a sewing-machine.   It also introduced a paper dated November 9, 1898, also signed by the defendant, which was in part as follows :   " This is to certify that we, Mr. and Mrs. Emily Crutchfield, have bought one Davis sewing-machine, . . and that we have given our note for sixty-five dollars, payable to the order of the Davis Sewing Machine Co., with a credit of $20.00, leaving a balance due of $45.00 on the first day of December, 1898.   Also, that Mr. T. M. Block, inspector, has given sufficient instructions and left the machine in good order and giving satisfaction.   This certificate is also to certify that the above memorandum is absolutely correct, and no other credit, payment, receipt or statement, made or given before the date of this certificate, is to be recognized in the payment of this note."   The defendant testi-

fied that an agent of the plaintiff came to her home and urged her to buy a machine. She told him that she did not want to buy a machine. He came early in the morning and stayed until about dinner-time. He offered to sell her a machine for $65, and to take in part payment her old machine at an agreed valuation of $20. She told him that she could not buy the machine until she had seen her brother, who attended to her business affairs for her. She then consented to take the machine and let him have her old one, with the understanding that there was to be no agreement of purchase until she could consult her brother. He told her that she need not sign a note that day, as he did not carry notes with him, and that another agent of the company would call on her later to close the trade. The signing of the note sued on, which took place on the occasion of this interview, was, according to the testimony of this witness, under the following circumstances: "Gamble [the agent] said he heard a train coming, that he had to pay for six machines by his horses running away; and ran out. Defendant went about her dinner. Gamble came running back in great haste, with a slip of paper, and said, 'Sign this.' Defendant asked what it was. He said it was a memorandum for his protection, to show the company where the machine was, and to show the man where to come to take the note. Relying on what he said, and because of his haste, I signed it without reading it. I had no idea it was a note. No train came." As to the signing of the second paper, the defendant testified as follows: "Mr. Block came around to instruct me in the use of the machine. I thought he was the man to take the note, and asked him. He said, no, he had nothing to do with that. He did not know anything about the machine. I was cleaning house, and had all my things out of doors. It began to rain, and I was in a hurry to get the things in and be rid of him. He asked me to sign a paper to show that he had been there and inspected the machine, and I did. I did not read it, on account of his statement of what it was, and on account of my haste." The verdict of the jury was as follows: "We, the jury, find for the defendant, and find against the plaintiff twenty dollars for old machine, or return of the old machine."

1. There can be no doubt that the jury were authorized to find from the defendant's evidence that the contract sued on was procured from her by fraud and did not express the agreement made

by her with the agent of the plaintiff. According to her testimony, the agent positively assured her that he would take no note from her, but would leave the machine for her to try, and that another agent of the company would come later to close the trade. He falsely represented to her, so she says, that his train was coming, and hurriedly requested her to sign what he declared was merely a memorandum for his protection, to show where he had left the machine, in this way inducing her to sign what was really an unconditional contract to buy the machine. Under the ruling of this court in *McBride* v. *Publishing Co.*, 102 *Ga.* 422, this, if true, was clearly such fraud as would render the contract voidable. But it is urged by counsel for the plaintiff in error, that, even if the note was voidable for fraud, the second paper was signed by her under entirely different circumstances ; that she will not be excused for her failure to read it ; and that in that paper she ratified and vitalized the first contract. This second paper was not offered as an original contract, but as a ratification of the former one. The rule of law on this subject is well stated in Hammon on Contracts, § 124, as follows : "In order to bind the deceived party as by an affirmance, whether by word, conduct, or acquiescence, he must have had knowledge of the fraud at the time of the asserted ratification. Acts done in ignorance of the fraud do not preclude a subsequent rescission. And ordinarily the knowledge must be actual. Current suspicion and rumor are not sufficient to charge him with knowledge. But he can not shut his eyes to obvious indications of fraud, and he is chargeable with knowledge of the facts whenever, by the use of reasonable diligence, he might discover the same." It is not claimed that the signature of the defendant to the second paper in this case was procured by fraud. She testified, it is true, that she signed it without reading it, under an emergency, but it was an emergency with which the plaintiff's agent had nothing to do. Therefore, if it were an original contract, the defendant would not be excused, on account of her failure to read the paper, from incurring its legal consequences. But as before seen, it was offered not as a contract, but as an affirmance or ratification of the note which she had been induced to sign by the fraud of the first agent; and in order to avail as an affirmance, it must appear that she knew of the fraud that had been practiced upon her and that she was ratifying her former voidable act, or at least that she could have had such knowledge by the ex-

ercise of ordinary diligence to discover it.    The question then is, did ordinary diligence, taking all the circumstances into consideration, require the defendant to read the paper which was offered as a ratification, before signing it?    That question was decided in the negative by the jury in the justice's court.    The question of diligence or negligence is peculiarly one for the jury, and we can not say that their finding in this instance was contrary to law.    The defendant testified that the agent assured her that he simply wanted her to sign a paper to show that he inspected the machine, and the paper did in fact contain a recital to that effect.    According to her evidence, she was in entire ignorance of having previously signed a contract, and naturally was not on the lookout for a written ratification of such a contract.    Taking all the circumstances into consideration, it is impossible to say as a matter of law that ordinary diligence would have led her to ascertain the paper she signed was a ratification of the former contract; and therefore the superior court did not err in overruling this ground of the certiorari.

2. The certiorari also complains that " the finding against the plaintiff, with the proviso that the plaintiff might return the old machine in lieu of the twenty dollars, is absolutely unauthorized by the evidence."    There is no contention that the finding of a money verdict at all was illegal.    The verdict is awkwardly expressed, but we think it contains, when properly construed, the justice of the situation from the defendant's standpoint and as authorized by her evidence.    In effect it provides that the parties shall be put in their original situations, with the alternative to the plaintiff of paying to the defendant the agreed money value of the old machine instead of returning the machine itself.    If a verdict for the defendant was proper at all, it was only just and equitable that the parties should be placed as they were before the original transaction.    The fact that the plaintiff was given an alternative is certainly not cause for complaint by him.

The foregoing disposes of the only question raised by the certiorari which requires discussion here.    The jury were authorized to find that the defendant tendered the machine back to the plaintiff as soon as she discovered the alleged fraud that was practiced on her; the verdict was fully warranted, and the court did not err in overruling the certiorari.

*Judgment affirmed.    All the Justices concur.*