Dahlstrom v. The St. Louis, Iron Mountain & Southern Railway Company, *Appellant*.

IN BANC.

108   525
115   104
116   463
117   234
108   525
128   607
108   525
71a   171
108   525
102a  1477

1.  **Negligence:** RAILROAD: CROSSING TRACK: CITY ORDINANCE. Plaintiff was injured while attempting to cross the defendant's track in the city of St. Louis through an opening between cars standing from twenty-five to fifty feet apart. He testified that he looked before crossing and did not see the cars were moving. The evidence also showed that the defendant was not observing the city ordinance regulating the movement of trains. *Held*, that the case was one for the jury.

2.  **Negligence Per Se:** VIOLATION OF ORDINANCE. Running a train in a city in violation of its ordinances is negligence *per se*.

3.  **Negligence:** ORDINANCE: QUESTION FOR JURY. Whether a train is "well manned with experienced brakemen at their posts" within the meaning of a city ordinance, is a question for the jury.

4.  ——— : ——— : ———. Whether an injury received by one from a moving train in crossing a railroad track could have been prevented by the company's observance of a city ordinance, was in this case a question for the jury.

5.  ——— : ———. Plaintiff's recovery will not be defeated because of his failure to look in the direction of the car which struck him, unless by so looking he could have discovered the threatened danger.

6.  **Practice:** CREDIBILITY OF WITNESS: INSTRUCTION. Where an instruction is asked in regard to the credibility of plaintiff as a witness, it is proper to modify it so as to make it applicable to all the witnesses.

7.  ——— : REMARKS OF COUNSEL : HARMLESS ERROR. The fact that plaintiff's counsel in his closing argument referred to the defendant's having introduced no evidence on the first trial of the case will not constitute reversible error.

*Appeal from St. Louis City Circuit Court.*—Hon.
Daniel Dillon, Judge.

Affirmed.

*H. S. Priest* and *H. G. Herbel* for appellant.

(1) The insurmountable fact exists that respond-
ent was struck by the car before he could traverse a
space of five feet (the width of the track) at a brisk
gait. To clear that distance required the taking of but
two steps, as the step of the average man is from two
and one-half to three feet. This circumstance, there-
fore, fixes with unerring certainty the close proximity
of the car to respondent when he stepped upon the
track. The assertion by respondent's counsel that his
client was nearly over the track when struck is not sup-
ported by the record, as respondent's evidence clearly
shows that he was struck by the car the instant he
stepped upon the track ; and the fact that his body was
lying on the opposite side of the track is accounted for
by his statement, that "when they strike I jump a
couple of feet before I fall." (2) To merely "glance"
in the direction of danger when it is too late to avoid
it, is not the exercise of such care as the law requires
in cases of this character. *Warner v. Railroad*, 21 Atl.
Rep. 737 ; *Harlan v. Railroad*, 64 Mo. 482 ; *Blight v.
Railroad*, 21 Atl. Rep. 995 ; *O'Donnell v. Railroad*,
7 Mo. App. 192 ; *Artz v. Railroad*, 34 Iowa, 153 ; *Clark
v. Railroad*, 50 Mo. 433. In *Butts v. Railroad*, 98 Mo.
272, the injury occurred at a public crossing under cir-
cumstances precisely similar to those attending the
Dahlstrom injury, and this court unhesitatingly pro-
nounced Mrs. Butts guilty of such contributory negli-
gence as barred her right of action, "notwithstanding
the negligence of defendant in the operation and man-
agement of its train." To the same effect are this
court's rulings in the analogous cases of *Yancy v.*

*Railroad*, 93 Mo. 433 ; *Stillson v. Railroad*, 67 Mo. 671 ; *Railroad v. Spearen*, 47 Pa. St. 547 ; *Houston v. Railroad*, 95 U. S. 703 ; *Cone v. Railroad*, 14 W. Rep. 100 ; *Goodlett v. Railroad*, 122 U. S. 391 ; *Schofield v. Railroad*, 114 U. S. 615 ; *Railroad v. Stroud*, 64 Miss. 784 ; s. c., 31 Am. & Eng. R. R. Cases, 443 ; *Peck v. Railroad*, 50 Conn. 379 ; *Wild v. Railroad*, 24 N. Y. 430.. (3) Whether or not defendant had a man on its train was immaterial to the issues of this case, as the failure to so have him could not have been the proximate cause of the injury. The vice of the first instruction given for plaintiff is incurable, because it assumes to cover the whole case and expressly refers to respondent's contributory negligence and erroneously defines its effect to the jury by telling them, that notwithstanding his contributory negligence he is entitled to recover if appellant failed to station a man on top of the rear car of its train. This court had occasion to condemn similar instructions in the cases of *Guenther v. Railroad*, 95 Mo. 296, and *Dlauhi v. Railroad*, 105 Mo. 653.

*E. W. Pattison* for respondent.

(1) The demurrer to the evidence was properly overruled, since defendant went into its own case, and the evidence as a whole made a case for the jury. *Bowen v. Railroad*, 95 Mo. 268 ; *Guenther v. Railroad*, 95 Mo. 286. Moreover plaintiff's testimony alone made out a *prima facie* case. *Brown v. Railroad*, 50 Mo. 461, 467 ; *Petty v. Railroad*, 88 Mo. 306 ; *Kelly v. Railroad*, 88 Mo. 548 ; *Merz v. Railroad*, 88 Mo. 667 ; *Donohue v. Railroad*, 91 Mo. 364 ; *O'Connor v. Railroad*, 94 Mo. 156 ; *Schlereth v. Railroad*, 96 Mo. 509 ; *Eswin v. Railroad*, 96 Mo. 297 ; *Grube v. Railroad*, 98 Mo. 330 ; *Hilz v. Railroad*, 101 Mo. 54 ; *Kellny v. Railroad*, 101 Mo. 67 ; *Wilkins v. Railroad*, 101 Mo. 106 ; *Murray v. Railroad*, 101 Mo. 242 ; *White v. Railroad*, 34 Mo. App. 57 ; *Railroad v. Clough*, 45 Am. & Eng. R. R. Cases, 137 ; *Lyman v. Railroad*, 45 Am. & Eng. R. R.

Cases, 163 ; *Massoth v. Canal Co.*, 64 N. Y. 529 ; *Williams v. Railroad*, 43 L. J. Eq. 105 ; *Railroad v. Phillips,* 112 Ind. 59. ( 2 ) There was no error in the action of the court below in refusing the first and fourth instructions asked by defendant, and in modifying the second and third. *Maher v. Railroad*, 64 Mo. 275 ; *Werner v. Railroad*, 81 Mo. 374 ; *Keim v. Railroad*, 90 Mo. 314 ; *Dunkman v. Railroad*, 95 Mo. 344 ; *Kelly v. Railroad*, 95 Mo. 284 ; *Eswin v. Railroad*, 96 Mo. 290 ; *Schlereth v. Railroad*, 96 Mo. 509 ; *Grube v. Railroad*, 98 Mo. 330 ; *Jennings v. Railroad*, 99 Mo. 394 ; *Kellny v. Railroad*, 101 Mo. 67 ; *Murray v. Railroad*, 101 Mo. 236 ; *Hilz v. Railroad*, 101 Mo. 54 ; Thompson on Negligence, pp. 420, 558, 1232 ; Pierce on Railroads, p. 350 ; *Massoth v. Canal Co.*, 64 N. Y. 524. ( 3 ) The instructions given by the court properly expressed the law applicable to this case. Cases cited under previous heads ; also, *Railroad v. Miller*, 29 Md. 252. The remarks of counsel in summing up the case furnish no ground for reversal. *Huckshold v. Railroad*, 90 Mo. 559.

BRACE, J.—This is an action for damages for personal injuries received by the plaintiff on Main street in the city of St. Louis by being struck and run over by the cars of the defendant on said street. The plaintiff obtained a verdict and judgment in the trial court for $10,000, and defendant appeals.

On a former appeal a judgment in favor of the plaintiff for $7,500 was reversed and remanded. 96 Mo. 99. The second trial resulting in the judgment from which this appeal is taken was had upon an amended petition, presenting the case in a different shape from that in which it appeared here before. The plaintiff in his amended petition after alleging the incorporation of the defendant sets out the following ordinance of the city of St. Louis in force at the time he received his injuries.

"It shall not be lawful, within the limits of the city of St. Louis, for any car, cars or locomotives propelled by steam power to obstruct any street crossing by standing thereon longer than five minutes, and, when moving, the bell of the engine shall be constantly sounded within said limits, and, if any freight car, cars or locomotives propelled by steam power be backing within said limits a man shall be stationed on top of the car, at the end of the train farthest from the engine, to give danger signals, and no freight train shall, at any time, be moved within the city limits without it be well manned with experienced brakemen at their posts, who shall be so stationed as to see the danger signals, and to hear the signals from the engine."

He then alleges that on or about the fourteenth "day of April, 1884, defendant had and maintained a large number of tracks, switches and sidings upon and along Main street, a public highway in said city of St. Louis, and its sai�036 tracks so laid on said Main street crossed many of the public highways of said city, and, among others, Chouteau avenue. On the morning of said April 14, 1884, plaintiff, in the pursuit of his proper business, and as he was lawfully entitled to do, was walking east on said Chouteau avenue, for the purpose of crossing said Main street, at the point of intersection of said street with said avenue. At that time defendant had blocked and obstructed the crossing of said Chouteau avenue and Main street with its freight cars, and allowed its cars to stand obstructing said street crossing more than five minutes ; and thereupon plaintiff, being unable to cross at Chouteau avenue, walked along said Main street in a southerly direction from Chouteau avenue, until he found an opening between the cars standing on said Main street, said opening being from twenty-five to fifty feet in width. Thereupon, plaintiff, not seeing any cars in motion, and hearing no danger signals, and not receiving any warning that any of said cars were in motion, or were about to be put in

VOL. 108—34

motion, started to cross said Main street through said opening between the cars. While thus crossing Main street, he was, through the carelessness and negligence of defendant's servants, in charge of its freight cars, struck by a freight car which was being backed on one of the tracks laid upon and along said Main street, was knocked down and run over by said freight car and others, as well as by the locomotive propelling the same, was thereby mangled and bruised, and had one of his legs and one of his arms cut off. Plaintiff says that the car by which he was struck, and those by which he was injured, were then and there being backed by a steam locomotive, and that no bell was sounded, and there was no man stationed on top of the car at the end of the train farthest from the engine, and no look-out kept to warn parties on said street, and no danger signals nor warning of any kind was given; that by reason of this failure on the part of the agents and servants of defendant in charge of said freight cars to keep a proper look-out, and to give proper and usual signals of danger, and by reason of a failure and neglect upon their part to comply with the provisions of the ordinance of St. Louis aforesaid, plaintiff received the aforesaid injuries," and for his damages asks judgment.

The answer was a general denial, and a plea of contributory negligence on which issue was joined by reply. At the close of plaintiff's evidence the defendant interposed a demurrer, which being overruled the defendant introduced evidence, and, after all the evidence was in, renewed its demurrer by asking the court to instruct the jury that under the pleadings and all the evidence the plaintiff is not entitled to recover, which was refused.

It appears from the evidence that on the east part of Main street between Chouteau avenue or La Salle or Sycamore street the defendant maintains six tracks, running north and south longitudinally on the street; three of these tracks extend north beyond Chouteau

avenue, and three ( switch or sidetracks ) to about the middle of the avenue.  On the first of the latter three, being the fourth track from the west side of Main street, at a point south of the avenue, and between it and La Salle street, the unfortunate casualty happened.  The plaintiff was struck by the last car of a series or train of box freight cars being backed at the time by a switch engine north on said track.  In backing, the engine and cars or a part of them passed over his body ; his cries attracted the attention of one of the defendant's employes at work repairing cars at a distance of about one hundred and twenty or one hundred and fifty feet from him, who ran to him and pulled him out from beneath the train while it was passing over him again, in being drawn out from the track to be switched onto another.  None of the trainmen saw the plaintiff, heard his cries, or knew they had run over him until several minutes afterward when they learned of it from others, when at some distance from the scene, engaged in their work on another track.

The plaintiff is a Swede, about forty-eight years of age, with a limited knowledge of the English language in which he expresses himself with difficulty.  He is a heavy blacksmith, and was earning at the time of his injury about $18 per week at light work ; when engaged at heavy work, for which he was best fitted, he made from $100 to $120 per month.  The injuries he received as described by the physician were two or more scalp wounds on top of his head, a crushing and contused wound in the fleshy part of the thigh about the middle, on the outside ; the left leg was crushed below the knee, and the left thigh about the middle third—the bones, flesh and all crushed ; the left arm was crushed about the middle, and he had a flesh and skin wound near the groin on the left side ; these injuries necessitated the amputation of the left thigh at or about the beginning of the upper third, and the left arm about the middle of the upper third, and, after his wounds

healed, left him an almost helpless cripple for life, with but one arm and one leg.

The plaintiff's evidence tended to prove that on the morning of the collision he, in the pursuit of legitimate business, had occasion to go down on the levee east of Main street; for this purpose he went down Chouteau avenue until he came to Main street which he found blocked by freight cars standing on the defendant's tracks at that crossing; he then turned and went south on Main street until he came to an opening between the standing cars, which appeared to him to be made for the purpose of enabling persons to pass across the street; he characterizes this opening between the standing cars as a street, "not a big street, a kind of middle-size street;" he says, "There were many cars, but they don't move; if they move I don't intend to cross over; they don't move when I was there,"—"no engine was moving;" "there was no whistle or bell sounding;" "there was no man on top of the cars." Seeing no engine and no cars moving, and hearing no signals or noise of moving cars, though his hearing was good, he entered this opening and endeavored to make his way over to the east side; he passed over two tracks in safety. He says: "I am sure of two, maybe three; I was hurted maybe on the third or fourth, I can't tell that." On cross-examination being asked if he looked south (the direction from which the car came that struck him) as he passed onto the track on which he was injured, he answered: "I am almost sure I did. * * * It is my nature to look on both sides when I cross the street. * * * Before I walk I look. * * * I looked. * * * I didn't see the engine before I was struck. * * * Something moved or made a noise. * * * I think the tenth part of a second I see the car, or hear it, but I can't say I was looking; it run over me then, quick."

The evidence for the defendant tended to prove that the space between the tracks where the plaintiff

was injured was from seven to nine feet; that the cars that ran over him were a train consisting of twelve, fifteen or twenty box freight cars which was being backed on the track on which he was injured by the switch-engine under the control and management of its crew; that it backed in, and pulled out very slowly, remaining on this track but a few minutes; that the bell of the engine was being sounded at the time the train was backing in, and that there was a brakeman stationed on top near the middle of the car at the end of the train farthest from the engine.

The defendant assigns for error the action of the court in giving the following instructions for the plaintiff: "1. If you believe from the evidence that an ordinance of the city of St. Louis required the defendant, when moving any car, cars or locomotive propelled by steam power within the limits of said city, to cause the bell of the engine to be constantly sounded, and, when backing any freight car, cars or locomotive propelled by steam power within said limits, to have a man stationed on the top of the car at the end of the train farthest from the engine to give danger signals, and further required that no freight train should, at any time be moved within said limits without being well manned with experienced brakemen at their posts, so stationed as to see the danger signals and hear the signals from the engine, then any neglect or failure by the defendant, its agents, servants or employes to comply with any or all of the above requirements was of itself negligence on the part of the defendant; and if you believe from the evidence that, as a result of such negligence or failure on the part of the defendant its agents, servants or employes, the plaintiff was injured, you will give a verdict in favor of the plaintiff, unless you also believe from the evidence that plaintiff was himself guilty of negligence which contributed directly to cause his injuries.

"2. If you believe from the evidence that plaintiff was knocked down, run over and injured on Main street, in the city of St. Louis, by a freight car, cars or locomotive propelled by steam power, which were then and there being backed on the tracks of the defendant within the limits of said city of St. Louis, without having a man stationed on the top of the car at the end of the train farthest from the engine to give danger signals, and if you further believe from the evidence that if the defendant had had a man so stationed, such man would, by the exercise of ordinary diligence, have discovered the plaintiff, after his position became dangerous, in time to have avoided running over him by the exercise of ordinary care and promptness on the part of the men in charge of said train, then even though you may believe that plaintiff was guilty of negligence, yet such negligence on his part will not prevent his recovering damages in this suit."

And, in refusing to give two instructions for defendant in the form in which they were asked, and in giving them as amended by the court; the first is as follows, the portion within brackets being as asked, the remainder the emendation of the court: "2. [ The court instructs the jury, that if they believe from the evidence that plaintiff could, by looking south immediately before he stepped upon the track on which he was injured, have seen the car which he states struck him, they will find their verdict for defendant ], unless the jury further believe from the evidence that plaintiff was injured by being run over on Main street, in the city of St. Louis, by a freight car, cars or locomotive propelled by steam power, which was then and there being backed on the tracks of defendant, within the limits of the city of St. Louis, without having a man stationed on the top of the car at the end of the train farthest from the engine to give danger signals, and that if a man had been so stationed he would, by the use of ordinary care and diligence, have discovered

plaintiff, after his position became dangerous, in time to have avoided injuring him, by the use of ordinary diligence and promptness on the part of the men in charge of said train."

The second was the usual instruction in regard to the credibility of witnesses, making it applicable by amendment to all the witnesses instead of the plaintiff alone as asked.

I.  The first question raised in the record is, was the evidence sufficient to take the case to the jury? Counsel for the defendant contends that it was not. Their argument in support of this contention proceeds not upon the theory that plaintiff did not make out a *prima facie* case upon the cause of action set out in the petition but upon the theo.y that, in making it out, the evidence also showed that he was himself guilty of such contributory negligence as to prevent a recovery. In support of this contention we are cited to a number of cases asserting the familiar doctrine that, when one steps on a railroad track before a moving train, the movements of which are plainly visible, if he but look to see,—or audible, if he but listen to hear, and he does neither, and he thereby suffers an injury which he could have avoided by doing either, he is guilty of such contributory negligence as will bar a recovery, unless by the exercise of reasonable care and diligence upon the part of those in charge of such moving train after he became exposed to danger from it, by his own negligent act, they could have discovered his perilous situation and avoided injuring him.  It is not contended that the evidence shows conclusively that he could have either seen or heard the train that struck him at any time on his passage across the street, until he had passed over, and from behind the cars that may have been standing on the third track; but it is contended that it does show that if, while passing over the space of seven or nine feet between that and the next track the one upon which he was injured, he had looked in the

direction of the car by which he was struck, he would necessarily have seen that that car was one of a moving train of cars that was then being backed across his pathway. The evidence must go this far to bring the case within the rule of the cases cited.

After a very careful examination of all the evidence we are satisfied that this contention cannot be maintained. On the contrary, the evidence tends to show that the plaintiff during the whole course of his progress across the street was continuously observant of his way and its surroundings, "his eyes going both sides, then front." That he looked and saw the car that afterwards struck him and perhaps others if they were there, next to it, while he was passing over the space between the third and fourth tracks, is a reasonable inference from his evidence; *but he did not see those cars moving*, and the evidence does not show that, during the time he was passing over that space, they were moving. On the contrary, so far as his senses were informed by the servants of the defendant in their management of its locomotive and its cars on that track, they were not moving nor about to move; he heard no bell, he saw no man on the top of the car to give the signal of danger required by the ordinance. He had as much right to pursue his way across the street as the defendant had to move its cars on its track along the street, and in doing so to rely upon the assurance which the ordinance gives to travelers upon the street and thoroughfares of the city, that their passage over them will not be endangered by moving cars or cars about to be moved in their pathway, without the warning provided for in that ordinance, and to assume that the cars which he saw and which appeared to him to be standing would in the absence of such warning not be projected into his pathway without such warning, by an engine which may have been invisible and inaudible to him as a moving machine threatening danger.

The whole argument in support of the demurrer to the evidence rests upon the assumption that the car which struck the plaintiff was one of a moving train of cars which became plainly visible to him as a *moving train* propelled by an engine the moment he emerged from behind the cars standing on the third track. While this is a deduction that might be drawn from the evidence, it is not by any means the only one, nor is it even the one most easily reconcilable with all the evidence. On the contrary, the hypothesis, which is more nearly in harmony with the evidence is that the switch crew with their engine were making up a train from the cars standing on the several sidetracks in that neighborhood; that they had gathered up and attached several cars before entering upon this switch track upon which plaintiff was injured, and on which cars were standing to be incorporated in this train; that they were approaching these cars standing on the right of the opening through which plaintiff was passing across the street, and during his passage to that track came in contact with them about the time he entered upon that track, and projected the car next to him against him, knocked him down and backed the whole train or a part of it over him, without seeing him, or having a man in a position to see him, and in entire ignorance of the consequence to him of the sudden movement communicated to these standing cars, and, without hearing his cries and groans audible to other workmen at a distance, reversed their movement, drew out from this track and went elsewhere to work; and that if the plaintiff had looked in the direction of the car that struck him, when passing between the third and fourth tracks, he would have seen that car and those next to it, not as a moving train, but as one of *standing* cars from which he need apprehend no immediate danger.

There was then evidence from which it might reasonably be found that plaintiff's injuries were the result of the negligence of defendant's employes in not

observing the provisions of the ordinance in their movements, while he was in the exercise of ordinary care in his movements, upon a public thoroughfare of the city. The case was, therefore, properly sent to the jury, and there was no error in overruling the demurrer to the evidence.

II. It is objected to the first instruction that it in effect declares that the failure of the defendant's servants to observe the requirements of the city ordinance is negligence *per se*, and that there was no evidence to indicate that the train was not well manned with experienced brakemen. As to the first objection it is only necessary to say that running a train in violation of a city ordinance has been repeatedly held by this court and elsewhere to be negligence *per se*. *Keim v. Railroad*, 90 Mo. 314; *Eswin v. Railroad*, 96 Mo. 290; *Schlereth v. Railroad*, 96 Mo. 509; *Grube v. Railroad*, 98 Mo. 330; *Kellny v. Railroad*, 101 Mo. 67; *Murray v. Railroad*, 101 Mo. 237; Thompson on Negligence, 558.

The second objection is groundless. The evidence showed the number of men engaged in the management of the train, but the court could not judicially determine whether it was well manned within the meaning of the ordinance; that was a question of fact for the jury. There was evidence tending to prove that it was not so well manned, *with brakemen at their posts*, as the ordinance required, in the fact (if there were no other), that the plaintiff in broad daylight, within a few feet and in plain view of one of the men, if he had been at his post, was run over, and although the train passed over his body twice, and his cries of agony were heard at some distance by others, by one of whom his body was drawn from between the tracks while the train was yet moving out from the switch, of the whole crew not one heard, or knew anything of the matter.

III. The objection to the second instruction for the plaintiff is based upon the same assumption upon which

the demurrer to the evidence rested, *i. e.*, that the car
that struck the plaintiff was in motion before the plaintiff
came near enough to the track to be within the danger
line, coupled with the further assumption that the
motion was of such a character that it could not have
been checked or retarded between that time and the
time when the plaintiff was in the act of stepping
beyond the danger line on the other side of the track
where he was struck, so as to have avoided injuring
him; but, as we have seen, a different and reasonable
theory may be drawn from the evidence upon which the
jury might have found that, although the plaintiff did
not take such a deliberate survey of the surroundings
as the circumstances of his situation required when
passing between the third and fourth tracks, yet even
when he was in the act of passing within the danger
line his injury might have been prevented by a signal
to the engineer or a warning to the plaintiff, had there
been a man in the position on the car that struck him as
was required by the ordinance, within whose view he
would have been passing; a glance of the eye would
have discovered his perilous situation; a wave of the
hand might have prevented the movement of the danger-
ous machinery toward him; a single exclamation of
warning might have either checked or quickened the
plaintiff's movement, so as to have avoided this lament-
ble casualty, and all might have been done in an instant;
but there was evidence tending to show that the
defendant had no eye there to see, no hand to signal,
and no voice to warn, as in duty it should have had,
thereby, if so found, rendering it responsible for the
injury to plaintiff which might have been avoided.
Whether it could have been so avoided was a question
for the jury on the evidence, and there was no error
in giving the second instruction for plaintiff. *Guen-
ther v. Railroad,* 95 Mo. 286; *Kelly v. Railroad,*
95 Mo. 279; *Dunkman v. Railroad,* 95 Mo. 244;
*Kellny v. Railroad, supra; Hilz v. Railroad,* 101 Mo.
36; *Hanlon v. Railroad,* 104 Mo. 381.

IV.   There was no error in refusing to give defendant's second instruction as asked.   The plaintiff's recovery could not be defeated for his failure to look in the direction of the car that struck him, immediately before stepping upon the track upon which he was injured, unless, by so looking, he would have discovered such a condition of things as threatened immediate danger to him, if he did step upon the track.   The instruction was properly qualified by the emendation of the court. *Kellny v. Railroad, supra*, and cases cited.

V.   There was no error in modifying defendant's third instruction on the credibility of the plaintiff as a witness so as to make it apply to all the witnesses in the case.   A general instruction on that subject such as was given in this case is not only the most convenient, but the fairest, way of presenting that question to the jury, when no distinction is called for by the particular circumstances of the case of any necessity for which the trial court must be the judge.

VI.   The amount of damages assessed was not complained of in the motion for a new trial ; it is not urged here that they are excessive ; and the instruction on that subject does not call for a reversal by reason of the fact that the jury were directed to take into consideration the plaintiff's " age and situation ; " nor is there ground for reversal in the fact that the counsel for plaintiff, in closing the case, referred to the fact that in the first trial the defendant introduced no witnesses.   The case seems to have been well tried, and the judgment is affirmed. All concur, except SHERWOOD, C. J., who dissents.

IN BANC.

BRACE, J.—This case has been reargued and reconsidered *in banc*, and the foregoing opinion handed down in division number one is adopted as the opinion of the court *in banc*.   All the judges concur, except SHERWOOD, C. J.