## CONNER v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division Two, May 10, 1904.

1. **ACCIDENT: Evidence of Different Causes: Conjecture.** While the burden rests upon the plaintiff to establish the cause of an accident as charged, yet where there is substantial evidence tending to show that it occurred in any one of two or more ways, it is for the jury to determine which was the cause. The burden is on plaintiff to show that it occurred in the manner which renders defendant liable, but if there is substantial evidence showing that cause, the verdict is not based on mere conjecture simply because plaintiff did not show to a reasonable degree of certainty that it did not occur in some other way.

2. **INSTRUCTION: Credibility of Witness: Admission Against Interest.** Unless a fact material to the issue has been admitted by a party to a civil suit, while testifying as a witness in the case, it is an unwarranted comment upon the testimony of such witness to tell the jury that "in determining what weight, if any, they will give his testimony, they have the right to consider his interest in the result of the litigation, and what he has testified to against his interest, if anything, is to be taken as true, and what he has testified to in his own favor is to be given only such weight as the jury may believe from all evidence in the case it is entitled to."

3. ————: ————: **Assuming Unfavorable Statements Have Been Made.** If the plaintiff or defendant testifying in a cause, makes statements which may be construed unfavorable to him, it is the province of the jury to consider them; but unless such statements amount to an admission of a fact material to the issue, it is not the province of the court to assume that unfavorable statements have been made, and instruct the jury on that subject.

4. **EVIDENCE: Fire In Other Mills.** In a suit for damages caused by a fire alleged to have been communicated to a mill from defendant's locomotive engine, evidence of the cause of fires in other mills in which the witness had worked, is incompetent and irrelevant, the conditions of the machinery in those mills not being the same, the time of the year and the temperature not being the same, and the methods of operating those mills not being the same. It is necessary to show the conditions to be the same as a foundation for the offer of testimony showing the cause of fires in those mills, but it is not held in this case that such testimony would be competent even had such foundation been laid, for, no attempt at such preliminary showing having been made, a decision of that point is not necessary.

5. ————: **Loss of Mill by Fire: Original Cost.** The estimate of the cost of the mill burned and of the cost of the new mill can only be considered by the jury for the purpose of determining the market value of the mill on the day it burned, but in showing what that value is it is not error to permit a showing of what was the original cost.

6. ————: **Ownership of Mill: Sharing in Profits: Parties to Action.** Where the evidence clearly shows that the legal title to the mill destroyed by fire was in the plaintiff, a showing that certain employees were jointly interested in the profits made by the mill, does not entitle them to be made parties to a suit to recover damages from the railroad company whose engine communicated the fire to the mill which burned. Such suit does not involve the profits, but the property itself.

Appeal from Henry Circuit Court.—*Hon. W. W. Graves,* Judge.

AFFIRMED.

*R. T. Railey* for appellant.

(1) Where the evidence tends to show that an accident occurred in any one of two or more ways, one of which renders defendant liable and the others do not, the burden of proof is upon the plaintiff to show that it occurred in the manner which renders defendant liable. If the court or jury find from the evidence that the accident could have reasonably been produced in either way, then it devolves upon the plaintiff, especially where the burden of proof is upon him, to show to a reasonable degree of certainty that it did not occur in the manner which would relieve defendant from liability. Oglesby v. Railroad, 177 Mo. 272; O'Malley v. Railroad, 113 Mo. 325; Perkins v. Railroad, 103 Mo. 52; Glick v. Railroad, 57 Mo. App. 105; Peck v. Railroad, 31 Mo. App. 125; Moore v. Railroad, 28 Mo. App. 625; Hays v. Railroad, 97 N. Y. 259; Baulec v. Railroad, 59 N. Y. 366; Railroad v. Shertle, 97 Pa. St. 450; Duncan v. Tel. Co. (Wis.), 58 N. W. 75; Megow v. Railroad (Wis.), 56 N. W. 1099; Orth v. Railroad (Minn.), 50 N. W. 364; Wintuska's Admr. v. Railroad (Ky.), 20 S. W. 820; Hughes v. Railroad (Ky.), 16 S. W. 276; Cotton v. Wood, 8 C. B. (N. S.) 571. (2) If the belting and machinery in the mill had either been oiled or cleaned at any time prior to the fire, this fact was peculiarly within the knowledge of the plaintiff and his employees. Counsel for defendant, in his opening statement to the jury, tendered the issue at the outset that said mill had caught fire and burned on account of the machinery, belting, etc., therein. Plaintiff was thereupon put upon notice. Defendant likewise conclusively established the proposition that unless said machinery, belting, etc., was so oiled and cleaned, spon-

taneous combustion would easily follow. Having failed to produce this proof, in order to show that defendant's alleged negligence was the proximate cause of the injury, the case was submitted to the jury upon pure conjecture, and a verdict authorized by the court below, predicated upon said conjecture. Plaintiff having failed to follow up his alleged prima facie case against defendant, by showing that his machinery had been properly oiled or cleaned within a reasonable time, the presumption of law is that it had not been so cleaned or oiled and that the accident complained of is equally as attributable to plaintiff's neglect of duty, as that charged against defendant. 1 Greenleaf on Evid. (15 Ed.), sec. 79; 1 Wharton on L. of Evid. (2 Ed.), sec. 369; 2 Wharton on L. of Evid. (2 Ed.), sec. 1266; State v. Hathaway, 115 Mo. 44; State v. Meek, 70 Mo. 355; State v. Lipscomb, 52 Mo. 32; Kansas City v. Muhlback, 68 Mo. 640. (3) The court should have given defendant's instruction as to the credibility of plaintiff as a witness in his own behalf. Plaintiff was one of the principal witnesses in his own behalf. He was undertaking to testify about almost every fact connected with the case, and made various statements in his testimony that were material and should have been conclusively taken against him by the jury. This instruction has been repeatedly before this court and held to be proper in the following cases: Feary v. Railroad, 162 Mo. 105; Pratt v. Conway, 148 Mo. 298; Davies v. Railroad, 159 Mo. 6; Payne v. Railroad (Mo.), 30 S. W. 150; State v. Bryant, 102 Mo. 32; State v. Turlington, 102 Mo. 663; State v. Brooks, 99 Mo. 137; Bogie v. Nolan, 96 Mo. 91; State v. Peak, 85 Mo. 192; State v. Talbott, 73 Mo. 350; State v. Curtis, 70 Mo. 596; Robbins v. Butler, 24 Ill. 387; Erwin v. Railroad (Mo. App.), 68 S. W. 90. (4) It was admitted by plaintiff that no settlement had ever been made, nor does it appear that Sheidenberger and Hank were not entitled at the time of trial, on a settlement of

said business, to a portion of the personal property burned with said mill, sued for in this action. They had a prospective interest, and as their rights did not appear on the face of the petition, defendant properly pleaded said matters in its answer. It is therefore insisted that both Sheidenberger and Hank should have been joined as coplaintiffs in this action. R. S. 1899, sec. 544, R. S. 1899, secs. 598, 602; Little v. Harington, 71 Mo. 391; State ex rel. v. True, 25 Mo. App. 454; Seay v. Sanders, 88 Mo. App. 486; Miller v. Crigler, 83 Mo. App. 406; Muldrow v. Railroad, 62 Mo. App. 435; McLaran v. Wilhelm, 50 Mo. App. 661. The cause should therefore be reversed. (5) Plaintiff's miller, George Sheidenberger, who had charge of the mill as plaintiff's head miller, and who had a prospective interest in the profits of said mill, knew that a portion of the glass in a window of the separating room on the south side next to the railroad track had been broken out for months. It was as large as his double fists. If sparks were liable to ignite the dust in said room, then plaintiff was guilty of negligence directly contributing to said injury, in leaving said broken glass there for months, when a nominal expense to himself would have avoided the injury. Railroad v. Brady, 16 Kan. 387; Fitch v. Railroad, 45 Mo. 322; Coates v. Railroad, 61 Mo. 38; Post v. Railroad, 108 Pa. St. 585; Collins v. Railway, 5 Hun (N. Y.) 499; s. c., affirmed, 71 N. Y. 609; Kellogg v. Railroad, 26 Wis. 236; Railroad v. Spear, 44 Mich. 170; Gibbons v. Railroad, 66 Wis. 163; Ross v. Railroad, 6 Allen 187; Kesee v. Railroad, 30 Ia. 78. ''A party can not recover any damages caused by the wrongful act of another, which he might have averted by trifling expense and reasonable exertions.'' Douglass v. Stephens, 18 Mo. 362; Waters v. Brown, 44 Mo. 302; Railroad v. McGrew, 104 Mo. 291; Trust Co. v. Stewart, 115 Mo. 246; Logan v. Railroad, 70 S. W. 736.

*M. A. Fyke, Peyton Parks, Frank B. Fulkerson* and *O. L. Houts* for respondent.

(1) The jury, under proper instructions, found that defendant's engine burned plaintiff's mill and the find-ing was an unavoidable conclusion and right. Matthews v. Railroad, 121 Mo. 298; Matthews v. Railroad, 142 Mo. 645; Campbell v. Railroad, 121 Mo. 340; Kennedy v. Railroad, 70 Mo. 243; Kennedy v. Railroad, 70 Mo. 252; Redmond v. Railroad, 76 Mo. 550; Fitch v. Railroad, 45 Mo. 322; Walker Bros. v. Railroad, 68 Mo. App. 476; Torpey v. Railroad, 64 Mo. App. 382. No evidence was introduced tending to show that this fire was caused by friction or spontaneous combustion. On the other hand, the positive evidence is that defendant's engine burned plaintiff's mill. (2) There was no error in permitting plaintiff to prove the original cost of his mill and ma-chinery, or value at time of the fire of a new mill like plaintiff's. This is clearly true in this case, where plaintiff followed up this proof by showing the value of his mill as compared with a new mill, and that his mill was as good as a new one. Matthews v. Railroad, 142 Mo. 666. (3) Plaintiff showed by conclusive testimony that his loss far exceeded the amount of the verdict. (4) Defendant's instruction was properly refused, because plaintiff did not admit or testify to any material fact, or to anything, against himself or against his interest. Defendant has not undertaken to point out any such tes-timony in the record. Instructions must be based upon evidence. Ephland v. Railroad, 137 Mo. 187. It has been repeatedly held by the appellate courts in this State that in civil cases it is not error to refuse this instruction, even where parties had testified to some-thing against themselves. Ephland v. Railroad, 57 Mo. App. 147; Ephland v. Railroad, 71 Mo. App. 597; Mc-Peak v. Railroad, 128 Mo. 617. (5) It appears from the undisputed evidence that plaintiff was the owner of the property destroyed. Defendant's proposition there-

fore is predicated upon a misstatement of the evidence and the authorities cited under that proposition have no application to this case. But if Hank or Sheidenberger had any interest in the property, that fact would not work a reversal of this judgment, because the most that the court would require would be a release upon the part of Hank and Sheidenberger of all claims before affirming the judgment, under the authorities cited by appellant. Mouldrow v. Railroad, 62 Mo. App. 436. They can claim no interest after testifying at the trial that the property belonged to plaintiff. (6) Plaintiff was not guilty of contributory negligence in leaving the broken glass in the window of the mill building. Mathews v. Railroad, 121 Mo. 298; Mathews v. Railroad, 142 Mo. 660. The answer did not plead contributory negligence. Defendant did not ask an instruction submitting the issue.

FOX, J.—This appeal is brought here from the Henry county circuit court.

"The petition substantially charges that defendant, at about 3:30 in the afternoon of September 6, 1899, was operating a freight train attached to locomotive engine No. 751, traveling east through the town of Holden in Johnson county, Missouri; that fire escaped from said locomotive and burned plaintiff's mill and the contents thereof, of the value of $28,000, for which he asks judgment.

"The defendant's amended answer contains (1) a general denial. (2) That plaintiff was not the absolute owner of the property, but that others unknown to defendant were co-owners with said plaintiff. (3) That the property mentioned in petition was insured in several insurance companies, and plaintiff was paid by them $8,050, and they thereby became subrogated to plaintiff's rights. (4) That the insurance so paid exceeded the value of the property destroyed by fire, and by reason thereof said plaintiff was not entitled to maintain

this action.    (5) That by reason of said subrogation the insurance companies were the real parties in interest, and the only parties authorized by law to maintain this action.

"The reply is a general denial of the new matter in said answer."

We have carefully examined the evidence, as disclosed by the record in this cause, and find that it substantially tends to prove that:

"Plaintiff owned and operated a four-story mill of the capacity of 125 barrels of flour and 100 barrels of meal in twenty-four hours' run, in Holden, Johnson county, Missouri. It stood northwest and southeast, at an angle of about thirty degrees from a direct line east and west, and fronted the south. Running west from the main building was a one-story brick addition to the mill. Above that one-story addition on the west, was a frame addition. In the front part of that frame addition there was a separating room and a dust room. Back of these rooms and to the north, was a room in which meal was bolted. The south wall of this frame addition, which was the south wall of this separating room, was constructed of studding and white pine weatherboarding and was not lathed or sealed.

"There were a number of doors and windows on the south side of the mill building. One of these doors was called the loading door, and just above this loading door was a window, in the south side of this frame addition and separting room. This window was about sixteen feet from the ground. Out of the lower part of this window, a glass was broken, leaving a hole.

"Defendant's tracks were south of and parallel to the mill building. One of defendant's tracks was called a 'loading track,' the middle of which was just fifteen feet from the south side of plaintiff's mill.

"The summer of 1899 had been warm and very dry. September 6, 1899, was dry, the day was warm, the mer-

cury standing at one hundred degrees, and the wind blew strong from the south, a little west of south.

"In the afternoon of that day the mill was in operation and defendant was engaged with one of its freight trains in switching along these tracks and on this 'passing track,' the center of which was fifteen feet from the south side of plaintiff's mill. After switching some time the freight train was backed, or pulled upon this passing track, and, after cutting a crossing west of the mill buildings, remained standing south of this door, called a 'loading door' and under this window in the south side of the separating room and frame addition. The train, after standing some time, backed up and made a coupling where the crossing was cut and again stopped and stood on this 'passing track,' a little west of this loading door south and a little west of this window spoken of. While switching along this track and standing south of the mill, hot air, cinders and smoke escaped from the engine of the train and blew up against the mill and into the south doors and windows and to such an extent that the operators of the mill were compelled to close the doors and let down the windows. Two witnesses, who were outside of the mill and observing the train, stated that they saw sparks of fire escape from the engine that was switching. While the engine of the train stood by the mill, the blower was kept on, for the purpose, as the witnesses explained, to keep up the fire in the engine, in order that the train might be able to pull out as soon as a passenger train came, for which the freight train was waiting. While the engine stood by the mill the fire box was cleaned out and ashes, fire and cinders dropped upon the 'passing track.' The engine was engaged in switching something like half an hour. It stood on this 'passing track' by the mill from one-half to three-quarters of an hour—the witnesses differed as to the time.

"The engine and train finally pulled out to the east, and within ten to thirty minutes, the witnesses differed

again as to the time, after this engine and train left, a fire was discovered two or three feet square on the outside of this pine weatherboarding on the south side of this frame addition and separating room near this window mentioned and just opposite and north from where this engine stood. The fire appeared to be on the outside of the weatherboarding and eating or working in when first discovered. It soon passed through into the building and the building and contents were consumed.

"The only fire that had been in the mill that day was in the engine room of the mill in the east end of the building seventy-five feet distant from where the mill took fire. The smoke of the mill engine was blown by the wind from the southwest that day, northeast and away from the mill. A short time before the fire occurred, Hagemeyer, one of the hands in the mill, had been all through what he called the mill proper, upstairs and downstairs, and had made an examination, and the condition of the machinery and everything was all right. He had not been in the separating room, or the room where the fire occurred. George Sheidenberger, head miller, in the afternoon of that day, before defendant's engine came and some half hour before the fire occurred, had been in the separating room and found the machinery in good condition and no fire or indications of fire about the building. The building was lighted by electricity and the current was not on in the daytime. There was no light in the separating room at all. The machinery in the separating room was not in operation and had not been for a week and a day. The machinery in operation in the mill at that time was in good condition and running all right. George Scheidenberger was in the habit of smoking, but had not smoked when he was upstairs in the separating room, or upstairs in the mill at all that day.

"There was evidence that coal or slack had once or twice taken fire, as by spontaneous combustion, in the engine room of this mill and was put out. That was

the only evidence of any fire that had ever occurred in that mill before.    There never had been a fire about the mill from hot boxes or friction.''

As to the value of the property the plaintiff's testimony tended to show that it was far in excess of the value, fixed by the jury, some of the evidence estimating the value as high as $27,000 or $28,000.

There is practically no dispute as to the facts that the evidence tends to prove.    The learned counsel for appellant does not undertake to give the testimony in detail, but makes the following statement:

''The testimony offered by plaintiff tends to show that defendant owned the railroad running southeasterly and northwesterly through the town of Holden, Missouri, where there are a number of tracks; that plaintiff owned a four-story mill, which had been partially reconstructed out of a mill brought from Warrensburg, Missouri, in 1876, and remodeled, enlarged, changed and rebuilt, so that at the time of the fire it was in good running order and in good condition.    Said evidence tends to show that plaintiff's mill was constructed parallel with, and on the north side of, one of defendant's spurs or switch tracks and about fifteen feet north of the latter; that near the middle of said mill, on the south side next to said track and on the ground floor, there was at the time of said fire a double loading door, through which flour was loaded from the mill into cars on said track; that there were a number of windows and other openings on the south side of said mill; that the mill contained machinery and all the appliances in general use in such mills; that above this double door some sixteen feet, there was constructed a dust room and also a separating room.    These were upon the second floor of said mill; that said dust room had some lattice work on the south side, and likewise a window, extending to within about three feet of the floor; that a portion of one of the glasses in said window had been broken for several months prior to the fire.

"Said evidence further tends to show that on account of a wreck somewhere on defendant's road, the yards at Holden were somewhat crowded, and the freight train mentioned in the petition backed in on defendant's track next to the mill aforesaid, and after doing its switching, remained standing on said track for some time, waiting for a passenger train to pull out, in order that it might proceed to Sedalia.

"The plaintiff's testimony further tends to show that the locomotive, while standing there on said mill track, was near said double loading door, and the smokestack of said locomotive was about fifteen or sixteen feet south of the dust room aforesaid; that at the time of the fire there was some wind blowing from the south toward the mill and that smoke and cinders from said smokestack came out to such extent, as it was passing by the mill, that they filled the mill with smoke, and caused the employees to close the doors and windows of same; that the foregoing occurred while the locomotive was switching; that the locomotive and part of the train attached thereto, for some time prior to its leaving said track, had gotten through switching and remained stationary. Said evidence further tends to show that while the locomotive was standing at place aforesaid, the fireman put on the blower while he was putting in coal for the purpose of keeping the steam and gas from getting out of the fire box.

"Plaintiff's evidence further tends to show that within about ten minutes after said locomotive and train pulled out, the whole of the upper portion of the mill, especially on the south side near the dust room, and separating room, was first discovered to be on fire. Said evidence also tends to show that smoke and cinders were seen going from the top of the smokestack in the direction of the mill, while it was there. Plaintiff's evidence also tends to show that within twenty or thirty minutes prior to the accident, one or more of the plaintiff's employees were up in the separating room and other por-

tions of the mill, and saw no fire or evidence of fire. Said evidence likewise tends to show that some of the personal property was removed from the mill before it caught fire and that some of the machinery and other portions of the mill, after the fire, were used in reconstructing a new mill.   (It further appears from the evidence of the plaintiff that George Sheidenberger and someone else were jointly interested in the profits made by said mill after certain items were deducted.)

"Defendant introduced evidence showing, without contradiction, that where mills of this character are operated and the belting machinery, etc., are not kept oiled and cleaned, fires originate from spontaneous combustion.   Defendant likewise offered testimony tending to show that plaintiff's miller had worked in other mills and that such fires had originated in such manner; that said last described testimony was excluded by the court and exceptions saved to the ruling by defendant.   Defendant likewise introduced the evidence of the train crew of said train mentioned in the petition to the effect that the locomotive, as it stood upon the track next to said mill, was near the east end of the mill and not in the vicinity where the fire occurred.   Defendant likewise introduced evidence tending to show that various persons for years had been in the habit of smoking in said mill and of dropping the stubs of their cigars wherever the smoker happened to be at the time.   Defendant's evidence likewise tends to show that fire was seen coming down from the separator, and carried from there below by buckets attached to belting.   Defendant further introduced testimony tending to show that fire was seen by those who came from the north side of the mill, and that it was up above and fell to the floor.   Defendant introduced testimony tending to show that the reasonable market value of the property destroyed was from $7,500 to $12,500.   The plaintiff introduced no evidence, either showing or tending to show that any of the belting or machinery, which could have produced the fire from

spontaneous combustion, had ever been oiled or cleaned at any time.''

This is a sufficient indication of the facts to enable us to determine the legal propositions involved in this cause.

We will give the testimony, as well as the instructions, proper attention in the course of the opinion. The cause was submitted to the jury, upon the testimony and instructions of the court, and they returned a verdict for the plaintiff, assessing his damage at the sum of $17,500.

From this judgment defendant in due time and form prosecuted its appeal and the cause is now before us for review.

### OPINION.

The record before us presents a number of propositions for our consideration.

First. It is contended by appellant that the evidence in this cause tends to show that the fire which destroyed the property may have originated in two or three different ways, and that plaintiff has failed to show that it occurred in that way which makes defendant liable, and that the verdict of the jury was based upon a mere conjecture.

Second. It is urged that the court committed error upon the refusal of an instruction prayed for by defendant.

Third. That the court admitted incompetent evidence on behalf of plaintiff, and excluded competent and material evidence on behalf of defendant.

Fourth. It is insisted that all the parties in interest are not joined in this suit, and for that reason this judgment should be reversed and remanded.

Fifth. That plaintiff was guilty of contributory negligence, and is not entitled to recover.

We will dispose of these contentions in the order in which they are herein set forth.

That we may fully appreciate the first proposition submitted to us for consideration, it is important, in the discussion of it, to keep in view the contention urged. It is thus stated by counsel for appellant:

''Where the evidence tends to show that an accident occurred in any one of two or more ways, one of which renders defendant liable and the others do not, the burden of proof is upon the plaintiff to show that it occurred in the manner which renders defendant liable. If the court or jury find from the evidence that the accident could have reasonably been produced in either way, then it devolves upon the plaintiff, especially where the burden of proof is upon him, to show to a reasonable degree of certainty that it did not occur in the manner which would relieve defendant from liability.''

This proposition is substantially correct, but the fundamental error assumed by appellant is in the conclusion, reached from the statement of the proposition that it presents a mere conjecture as to the cause of the accident.

If there is substantial evidence tending to show that an accident occurred in any one of two or more ways, or any other number of ways, while the burden rests upon the plaintiff to establish such cause of the accident as would render the defendant liable, it by no means presents a case of mere conjecture; but is a question of fact, which should be submitted and determined by the triers of the facts. We only enter the field of conjecture in the absence of proof; when proof enters, conjecture disappears.

Our attention is earnestly directed to the recent cases of Oglesby v. Railroad, 177 Mo. 272, and Warner v. Railroad, 178 Mo. 125, as supporting the contention urged by learned counsel for appellant. An examination of those cases will demonstrate that the conclusions reached in the majority opinions were based upon the

absence of proof as to the cause of the accident. In the
Oglesby case, plaintiff was compelled to reply upon the
physical facts presented after the wreck to sustain his
allegations in the petition; this court simply held that,
from the physical facts presented, it was a mere con-
jecture that the wreck was occasioned in the manner con-
tended for by plaintiff. There was no proof in that case
tending to show that the wreck was occasioned by the
defective car; had there been substantial proof tending
to prove such fact, even though there had been proof
tending to show that the wreck was occcasioned from a
different cause, the case would have been properly sub-
mitted to the jury; but it is apparent, from an analysis
of the opinion in that case, that the verdict sought to be
supported was based upon a mere conjecture. This is
clearly indicated in the majority opinion. It was there
said:

"Granting that the broken sill timbers of this U. L.
car were found to be doty and worm-eaten, as plaintiff's
witnesses who examined them immediately after the
wreck say they were, they tell no more the cause that
brought on the occurrence of the wreck that resulted in
plaintiff's injury, than the broken sill timbers, seen by
those same witnesses and many others, under the eight
or ten other wrecked and broken cars of that train. Each
tells the story that some unusual and violent energy was
applied to effect their destruction, but what caused the
application of that unusual force to be exerted as it was,
the one car is alike as silent as the others. The broken,
decayed sill timbers of this 'U. L.' car and the broken
sound timbers of the other eight or ten cars of the wreck,
are alike but incidents found in a wreck, but neither, of
itself, nor all together, tells a story that would warrant
more than a conjecture to be made therefrom."

In the Warner case, the verdict was sought to be
maintained, not upon testimony tending to show two or
more ways in which the accident may have occurred; but
upon a mere guess or conjecture as to the cause of the

injury.  MARSHALL, J., after reciting fully the details
of the accident in that case, says: ''What was the cause
of all this is a mere matter of guess or conjecture, but
there is nothing in the facts shown or the physics of the
case that has even a reasonable tendency to support the
negligence charged in the petition.''

It is made manifest from those cases that this court
maintained the distinction between cases where the evi-
dence tends to prove the cause of the accident, and those
in which the verdict is reached in the absence of proof,
upon a mere guess or conjecture.

The rule is verly clearly announced, and the distinc-
tion sharply drawn, in Glick v. Railroad, 57 Mo. App.
97, where it is said by the court:

''It is with reluctance that appellate courts inter-
fere with the province of juries in passing upon ques-
tions of fact.  'Whenever, from all the facts and circum-
stances in evidence, a jury may, without doing violence
to the dictates of reason and common sense, infer a given
fact on account of its known relation to the fact proved,
the court could not interpose its own different conclu-
sion.  But while this is correct, the due protection of
property rights demands that the court should draw the
line with a firm hand between tangible evidence and rea-
sonable, legitimate deductions and mere conjecture or
speculation.' ''

This leads us to the inquiry, was this cause sub-
mitted to the jury upon mere speculation, guess or con-
jecture, or was there substantial testimony tending to
prove the allegations in the petition?  We have read
the testimony disclosed by the record in this cause with
a marked degree of care, and have reached the conclu-
sion that there was ample proof to authorize the court to
submit the questions of fact to the jury.  In fact, if the
testimony in this cause did not warrant the court in sub-
mitting it to the jury, we confess that there would be no
case of this character which could be established by cir-
cumstantial evidence.  No one can read the evidence in

this cause, or the commendable frank admissions of counsel for appellant as to what the testimony tends to prove, and escape the conclusion that plaintiff, by a strong presentation of circumstantial evidence, fully justified the court in submitting the case to the jury, and fully supported the finding of the jury as to the cause of the destruction of plaintiff's property. [Mathews v. Railroad, 121 Mo. 298; Matthews v. Railroad, 142 Mo. 645; Campbell v. Railroad, 121 Mo. 340.]

It is insisted by appellant that to make out a prima facie case for plaintiff it was an absolute necessity to show that the machinery in the mill had been properly oiled, and the failure to make this showing defeats the right of recovery. We can not agree to this insistence. It will be noticed that in addition to the strong circumstantial proof that this property was destroyed by sparks escaping from the engine, it was shown that those in charge of the mill had observed the machinery only a short time before the fire, and that everything was in good running order, and no evidence of friction in any part of it; and even though it be conceded, for the purposes of this case, that there was some testimony tending to support the theory of appellant that the fire may have resulted from spontaneous combustion, it was the province of the jury to determine, from all the evidence before them, the disputed facts.

There is involved, in nearly every case of accident, different theories as to the cause of it, and where it is a mere guess or conjecture as to which theory is correct, it is not a case for the jury and this court has never hesitated to so declare. That is not this case.

Cases of this character are not of first impression in this court; they have very frequently had its attention, and unless the conclusions reached in nearly all of the adjudications of this kind as to the sufficiency of proof to support a verdict, are manifestly erroneous, this was a case for the jury and there was no error in the action of the trial court in refusing to take it from them.

Defendant prayed the court to give the following instructions: "While plaintiff is a competent witness in his own behalf, yet the jury in determining what weight, if any, they will give his testimony, have the right to consider his interest in the result of this litigation, and what plaintiff has testified to against his interest, if anything, is to be taken as true, and what he has testified to in his own favor is to be given only such weight as the jury may believe from all evidence in the case it is entitled to."

This instruction was refused, and its refusal is complained of as error. This court said in Dahlstrom v. Railroad, 108 Mo. 540: "There was no error in modifying defendant's third instruction on the credibility of the plaintiff as a witness so as to make it apply to all the witnesses in the case. A general instruction on that subject, such as was given in this case, is not only the most convenient, but the fairest, way of presenting that question to the jury, when no distinction is called for by the particular circumstances of the case of any necessity for which the trial court must be the judge."

To the same effect is Ephland v. Railroad, 137 Mo. l. c. 198. The conclusion reached by the court in that case is applicable to the case at bar; it was said, in respect to the action of the trial court involving the same principle as the one before us, that: "We do not think there were any admissions of plaintiff, while testifying, that authorized giving the instruction. Such instructions should not be given unless facts material to the issue have been admitted."

An examination of all the authorities will demonstrate that the principle announced in this instruction has ordinarily been confined to admissions, statements and confessions made by a party to the suit, in conversations outside of court; however, it may be conceded that if a party to a suit, while on the witness stand, makes an admission of a material fact, such fact would be taken as true; but to authorize an instruction to that effect,

the fact admitted should be material to the issue in the cause. [Ephland v. Railroad, supra.] If it is a mere construction of phrases or expressions used by the witness in detailing his testimony, as to whether the statements are favorable or unfavorable to his side of the case, then there is no necessity for, nor is it error to refuse, an instruction embodying the principle in the one before us. It is simply the province of the jury, guided by the general instruction as to the credibility of witnesses and the weight to be attached to their testimony, to determine the credit of such witness and the force and effect of his testimony. If a plaintiff or defendant testifying in a cause make statements which may be construed unfavorable to him, it is the province of the jury to consider them, but unless such statement amounts to an admission of a fact material to the issue, it is not the province of the court to assume that unfavorable statements have been made, and instruct the jury on that subject.

There is a marked distinction in the application of the principle sought by the instruction now being discussed, to statements made by parties to the suit in conversations previous to the trial, and statements made on the witness stand to the jury. In the former, the statements made in the conversation are related to the jury by another witness; in the latter, the statements are made by the party to the suit, as a witness. In the former, it is appropriate for the court to tell the jury the legal way of weighing such statements. In the latter, the witness is before the jury, they are the sole and exclusive judges of his credibility, and for the court to undertake to tell the jury how his statements are to be construed, unless a material fact to the issue is admitted, would be an unwarranted comment upon the testimony of such witness.

GANTT, J., speaking for the court, said in Montgomery v. Railroad, 181 Mo. 477, decided at this term: "Among other instructions the court gave the following

on the credibility of witnesses to-wit: 'In arriving at your verdict in this cause it is your duty to take into consideration all the facts and circumstances detailed in evidence, the interest, if any, which the witnesses testifying have in the result of the litigation, and if the jury believe that any witness has knowingly and willfully sworn falsely as to any material matter in issue, then you are at liberty to disregard the whole or any part of the testimony of such witness.' Perhaps no instruction given in criminal cases has been so persistently assailed by counsel for the defense as this instruction 'C,' asked by defendant in this case. It has usually been given in cases where admissions or confessions of the defendant have been proven wherein while confessing certain damaging facts he has, at the same time, sought to palliate or excuse his conduct. It has been strongly urged that the instruction is in a sense a comment upon the evidence by the court and an invasion of the province of the jury to weigh the evidence, but it has been sustained. In civil cases while it has been approved in some cases on the state of facts developed, in others it has been ruled that where the court has, as it did in this case, given a general instruction on the credibility of witnesses, and authorizing the jury to take into consideration 'the interest of the witnesses in the result of the litigation,' it has been ruled not error to refuse it. [Dahlstrom v. Railroad, 108 Mo. l. c. 540; Ephland v. Railroad, 137 Mo. l. c. 198.] While this instruction was held not to be error in Feary v. Railroad, 162 Mo. 105, there was no criticism of the former decisions of this court above noted and it was obviously not the intention of the court to overrule them.''

Independent of all that has been said as to the correctness of this instruction, the evidence of plaintiff in this cause, as disclosed by the record, fails to show any such admissions of fact, material to the issues, as would

warrant the trial court in giving the instruction requested by defendant, and there was no error in refusing it.

It is urged that the court committed error in the exclusion of the testimony of George Sheidenberger. That we may fully appreciate the action of the court in respect to this testimony, we here quote the testimony as offered:

"Q.   I will get you to state what other mill you worked in before you went to Mr. Conner's?   A.   I worked at the Eureka Mills at Warrensburg.

"Q.   I will ask you to tell the jury whether or not there was any fire in that mill; if that mill caught fire while you were working there?

"Plaintiff objects for the reason it is wholly immaterial, irrelevant and incompetent.   Objection sustained.   Exception taken at the time by defendant.

"Q.   I will ask you if you were not the head miller at that mill, and if that mill while you were there did not catch fire from machinery, or from some other cause unknown in the mill?

"Plaintiff objects for the same reason heretofore assigned.   Objection sustained.   Exception taken at the time by defendant.

"Q.   I will ask you if you had worked in any other mill before that, and if so, where?   A.   Yes, sir.

"Q.   Where?   A.   At Lamonte.

"Q.   I will ask you if you did not have a fire in that mill while you were the head miller there that caught inside of the mill from the machinery or from some other cause unknown?

"Plaintiff objects for the same reason as heretofore assigned.   Objection sustained."

It certainly will not be seriously contended that this testimony was competent or relevant.   This was an inquiry as to fires in other mills, and no pretense that the conditions of the machinery in those mills were similar to the one involved in this cause, and an entire absence

of any testimony as to the method of operation of the mills, the time of year or the temperature at the time it is sought to show the mills caught fire. Neither was there any offer to lay this foundation for the introduction of this testimony.

It is unnecessary to say, that even if the preliminary showing had been made, the testimony was inadmissible; that it was incompetent and irrelevant, as presented, is too plain for discussion.

It is also insisted that the court committed error in the admission of testimony by plaintiff, as to the original cost of the mill and the cost of a new mill. The court, in its instructions, confines the consideration of this testimony to its legitimate purpose; it told the jury that: "The estimate made by the witnesses as to the cost of a new mill on September 6, 1899, can only be considered by the jury in determining the reasonable market value of the mill, burned as it stood on said date, September 6, 1899."

Upon this proposition, the court, in Matthews v. Railroad, 142 Mo. l. c. 666, said: "For the purpose of ascertaining the value of the barn at the time of its destruction, plaintiff was entitled to put the jury in possession of all the facts bearing upon the question. There was, therefore, no error in permitting witnesses to testify to the original cost, though materials should then have been more costly than when the building was burned. Defendant had the right to show the difference in the cost and the depreciation in value by use and natural causes."

This is decisive of that question; there was no error in the admission of the testimony complained of.

There was no issue presented by the pleadings, or the instructions of the court, as to contributory negligence. Hence it is not before us for review.

This leaves us to the consideration of the last proposition. Appellant contends that Scheidenberger and Hank were parties in interest in said cause, and

should have been joined in the suit, and for this failure the judgment should be reversed and remanded. The testimony in this cause indicates clearly that the legal title to the property destroyed was in the plaintiff.

The ownership of the property was submitted to the jury, by proper instructions, and their finding was adverse to the defendant.

Appellant in its statement of what the testimony tends to show, says: "It further appears from the evidence of plaintiff, that George Sheidenberger and some one else were jointly interested in the profits made by said mill after certain items were deducted."

Conceding that to be true, it does not vest any title to the property in those parties who were simply interested in the profits of the mill. There is no inconsistency in the proposition that plaintiff was the legal owner of the mill and property in connection therewith, and the fact that other parties may have had a prospective interest in the profits. The plaintiff testified that he was the owner of the property, and Sheidenberger and Hank made no claim to any interest in the property destroyed. Hence the finding of the jury, upon that question, is fully supported.

We take it, that it is clear that a mere prospective interest in the profits of this mill, by other parties, does not make them either necessary or proper parties to this suit for the destruction of the property. The profits of this mill are not involved; but the property itself, and the legal owner of it, is the only necessary or proper party.

We have thus given expression to our views upon the controverted questions presented in this record.

The judgment being for a large amount, with the view of ascertaining the basis upon which the jury made the estimate of the value of the property destroyed, we have critically examined, in detail, the items of property destroyed and the testimony as to its value. We find the value, as fixed by the jury, fully supported by

the testimony.   There is no contention that the jury, in assessing the damages, were governed by prejudice or passion; in fact, the preponderance of evidence indicates a greater value than that fixed by the jury.

Finding no reversible error in the trial of this cause, the judgment should be affirmed, and it is so ordered. All concur.